THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JAMES WESTON, Appellant.

Fourth Department, May 18, 1973.

*Nathaniel A. Barrell* (*Henrietta M. Wolfgang* of counsel), for appellant.

*Michael F. Dillon, District Attorney* (*Thomas G. Kobus* of counsel), for respondent.

SIMONS, J. The defendant appeals from a judgment of conviction upon a jury verdict finding him guilty of manslaughter in the second degree and from an order of the trial court denying his motion to suppress a shotgun and ammunition discovered as a result of post-arraignment interrogation of defendant by the police and used as evidence at his trial.

The defendant was charged in a two-count indictment with intentional murder in violation of subdivision 1 of section 125.25 of the Penal Law and murder based on reckless conduct under circumstances evincing a depraved indifference to human life in violation of subdivision 2 of the same section. The People charge that defendant intentionally killed Donna Mae Nichols by shooting her in the bedroom of her home in Orchard Park, New York. The prosecution's opening statement made it clear that the People had abandoned any attempt to convict under subdivision 2 of section 125.25 of the Penal Law and at its conclusion the court granted a defense motion to dismiss the second count of the indictment.

At the close of the evidence, the defendant requested that the case be submitted to the jury solely on a charge of murder and counsel stated that he would except to any charge down to manslaughter first degree or second degree. The court properly submitted the case to the jury with charges of the lesser included crimes of manslaughter in the first and second degrees. Since the evidence before the jury permitted it to find the defendant

was reckless in the use of the shotgun and the death was caused by such recklessness the charge down was proper. (CPL 300.50; *People* v. *Asan,* 22 N Y 2d 526; *People Mussenden,* 308 N. Y. 558; *People* v. *Blowe,* 40 A D 2d 982.) Indeed, it would have been error if the trial court had refused a request to submit these included crimes under an indictment for intentional murder (see *People* v. *Asan, supra*; *People* v. *Blowe, supra*).

The cases cited by appellant do not require a different holding. In *People* v. *Weisser* (36 A D 2d 54, affd. 31 N Y 2d 1051) this court considered the propriety of submitting the crime of felony murder to the jury where the only charge remaining in the indictment was intentional murder. *People* v. *Wall* (34 A D 2d 215, affd. 29 N Y 2d 863) involved the question of whether criminally negligent homicide is a lesser included crime under an indictment for manslaughter in the first degree. Neither case is in point.

The second issue concerns the court's denial of the defendant's motion to suppress the shotgun and the shells found in it. He contends that the gun was located as a result of improper police interrogation of him. It is necessary to a decision on this issue to review some of the factual background.

The decedent was married to Richard Nichols and the couple had three children. The marriage was a troubled one and at various times the decedent left her husband and went with her children to live with the defendant. On these occasions, the decedent's husband pursued various legal remedies to get his wife back and to obtain custody of the children but it became clear in early 1971 that she intended to leave him and, in fact, divorce proceedings had been started. On March 16, 1971 apparently as the result of threats or pressures, decedent was persuaded to return to the family's home to live with her husband. Nevertheless, during March and April before her death, to her husband's knowledge decedent continued her affair with the defendant and saw him regularly at the house. It was the People's contention that the defendant went to the Nichols' home the night of the killing to ask Donna Mae to leave her husband and that because she refused the defendant went downstairs, took her husband's .12 gauge shotgun out of the hall closet, returned to the bedroom and shot decedent while standing three to five feet behind her. The defense admitted that defendant had killed Mrs. Nichols but claimed that the shooting was an accident. Defendant's theory was that while standing in the bedroom the defendant threatened to shoot himself if Donna Mae refused to return to him. She was lying in bed at the time.

She rose and attempted to stop him by grabbing the gun barrel. As she did so, the gun accidently discharged and killed her. The defendant did not take the witness stand and none of the three young children present in the house at the time of the shooting testified. The evidence of intentional killing was entirely circumstantial.

The homicide occurred in the early morning hours of April 16. After wandering around for several hours defendant surrendered to the Erie County Sheriff. He was questioned by Sheriff's detectives in Buffalo and then taken to the Orchard Park Police Station for questioning and arraignment. Throughout all the questioning by both the detectives and the Orchard Park Police, defendant said no more than that the killing was an accident although at different times he admitted that he had been in the house and that he had the gun. The defense does not press the issue as to the voluntariness of any of these statements and we find none of them was obtained in violation of defendant's *Miranda* rights (*Miranda* v. *Arizona,* 384 U. S. 436). The crucial issue concerns a statement taken from the defendant after his arraignment in which he volunteered to show the police where he hid the shotgun and took them to the spot.

The constitutional and statutory right to counsel exists at every stage of a criminal proceeding and once the proceeding is commenced, interrogation of an accused in the absence of his attorney is an impermissible step in the prosecution (*People v. Arthur,* 22 N Y 2d 325; and see *People* v. *Hetherington,* 27 N Y 2d 242, 244). Any statement or evidence obtained as a result of such interrogation is inadmissible at the trial (*McLeod v. Ohio,* 381 U. S. 356; *Massiah* v. *United States,* 377 U. S. 201; *People* v. *Waterman,* 9 N Y 2d 561).

Defendant was brought to the Orchard Park Police Station for booking and arraignment by the Sheriff's officers and turned over to the local police. He was informed by the local police of his *Miranda* rights. He was asked if he cared to make a statement and answered " No." He was asked to sign a waiver card and refused to do so. He was asked if he wished an attorney. He said that he did and he asked that a lawyer be appointed. The police told defendant that they were unable to provide him with a lawyer immediately but that he would get one at arraignment. At the arraignment later that afternoon, defendant asked for an attorney. The arraigning Magistrate said that " he would order all proceedings stopped at that time " and would arrange for appointment of an attorney. The defendant had been arrested, arraigned and formally charged with murder.

The investigatory stage was over and the criminal prosecution of defendant for the murder of Donna Mae Nichols had begun. Defendant had demanded, was entitled to, and had been assured by the court that he would receive the assistance of counsel to defend himself against the charge. No evidence obtained thereafter as a result of questioning in the absence of counsel was admissible against him at trial.

Nevertheless, "immediately" after his arraignment, defendant was approached in his jail cell by the Sheriff's detective who was waiting to return him to the county penitentiary and asked if "having in mind the same rights we talked about before, specifically that you don't have to say anything if you don't want, and that you have a right to an attorney, I would like to ask where the gun is, Jim." The defendant hesitated and then said: "I'll do better than that. I won't tell you where the gun is, I'll show you where it is." He took the Sheriff and a member of the Orchard Park Police to the area where he had discarded the gun and it was subsequently recovered.

The trial court held that the defendant waived his rights by his statements and actions. It, therefore, denied the motion to suppress the shotgun and the shells found in it.

On the facts of this case, the defendant had exercised his right to counsel and he could not waive that right without the presence of his lawyer (*People v. Vella*, 21 N Y 2d 249).

Before an attorney is requested or has entered the proceeding a defendant may waive his right to counsel during a criminal proceeding and voluntarily subject himself to interrogation (*People v. Wooden*, 31 N Y 2d 753; *People v. Lopez*, 28 N Y 2d 23; but see *United States ex rel. Lopez v. Zelker*, 344 F. Supp. 1050, 1054, affd. 465 F. 2d 1405). But the right to counsel is so vital to an accused, particularly in the pretrial stage after the criminal cause has been commenced by indictment or arraignment, that a knowing and voluntary waiver of that right should be established by clear and unmistakable evidence. The improper interrogation here could not be justified by the detective's perfunctory reference to a remembrance of warnings past.

Even if a waiver were possible under these facts, taking defendant's acts and conduct at face value, he did not knowingly waive. Throughout the day he never denied killing Donna Mae Nichols. To the limited extent that he talked to police officers and other witnesses he admitted being in her house, in the bedroom and shooting her but he insisted it was an accident. Undoubtedly, in his mind, there was little jeopardy to his cause in turning over a gun which he had admitted he used in the

killing. The questioning constituted nothing less than an improper pretrial discovery of evidence which had an effect not realized by defendant upon his claim of accidental shooting (cf. *Von Moltke* v. *Gillies*, 332 U. S. 708, 724; *Matter of Lawrence S.*, 29 N Y 2d 206).

The value of the gun as evidence can hardly be minimized or considered harmless. The testimony of the ballistics expert based upon his laboratory tests was that decedent was killed when the gun was fired from three to five feet behind her. This was one of the most damaging items available to the prosecution to overcome the physical evidence which tended to support defendant's contention that the decedent was accidently shot when she slipped while grabbing the barrel of the gun.

The judgment should be reversed, the motion to suppress granted and a new trial granted on the charge of manslaughter, second degree.

GOLDMAN, P. J., WITMER, MOULE and CARDAMONE, JJ., concur.

Judgment unanimously reversed on the law and facts, motion to suppress granted, and new trial granted on the charge of manslaughter, second degree.