■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN COLEMAN, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Queens County, rendered November 15, 1974, convicting him of robbery in the first degree (two counts), upon a jury verdict, and imposing sentence. Judgment affirmed. No opinion. Cohalan, Rabin and Titone, JJ.,

concur; Hopkins, Acting P. J., dissents and votes to reverse the judgment, grant that portion of the defendant's pretrial motion which sought to suppress evidence as to certain identifications made of defendant at a lineup, and grant a new trial, with the following memorandum, in which Shapiro, J., concurs: The defendant has been convicted of two counts of robbery in the first degree after a jury trial. The robbery occurred at 11:30 P.M. in a dimly lit bar, where a man said to be the defendant held up the patrons and the bartender at gunpoint. As will appear, the identification of the defendant as the robber is not at all certain, and, because of errors in the pretrial identification procedures, the conviction should be reversed. The robbery took place on May 21, 1974. On the following day, a detective showed the photographs of six individuals, including the defendant, to Cassano and Cahill, two of the victims of the robbery. Both identified the defendant as the robber from his photograph. At some point in time between May 21 and May 23, 1974 the defendant was confined to the Queens House of Detention on unrelated charges. The robber had been described as a black man with a moustache, goatee, an Afro style of haircut, and wearing an army jacket. In the six photographs, only the defendant was shown clothed in an army jacket; only one individual other than the defendant had both a moustache and goatee; only two others had an Afro haircut; and two were wearing glasses, though the defendant did not. By an order dated May 23, 1974, the police obtained an *ex parte* order from the Criminal Court of the City of New York, Queens County, directing the defendant's presence at a lineup. It does not appear that the defendant's counsel on the other charges was notified of the lineup, or that, indeed, the defendant knew of the lineup in advance. The detective testified that at the time of the lineup he advised the defendant that he was a suspect in the robbery, and that he was entitled to have an attorney present; the defendant, according to the detective, said nothing, but indicated that he did not desire an attorney.[1] Both Cassano and Cahill identified the defendant at the lineup. Photographs of the lineup show that two persons in the lineup (other than the defendant) wore both a moustache and goatee; one of them was considerably shorter than the defendant; only one person other than the defendant conformed to the details of the description of the robber. At the *Wade* hearing *(United States v Wade,* 388 US 218), and at the trial, Cassano was not able to identify the defendant as the robber. However, at the trial, Cassano was permitted to testify, over objection, that he had identified the defendant as the robber at the lineup. Likewise, Cahill testified that he had identified the defendant as the robber at the lineup, but said that he was not sure that the defendant, as he appeared in court, was the robber.[2] Another victim of the holdup, Linda Dutcher, testified at the *Wade* hearing and at the trial that the defendant was the robber; nevertheless, at the trial, she added that she was not sure. Petracca, also present at the time of the holdup, identified the defendant as the robber at the *Wade* hearing and at the trial. Three other persons in the bar at the time of the robbery were

1. The detective's testimony was that the defendant nodded "affirmatively" that he understood the warning, and nodded "negatively" that he did not want an attorney. Though an Assistant District Attorney was present at the lineup, he was not present at the time of the warning. The defendant would not sign a written report that he had been advised of his right to counsel.

2. Cahill testified at the *Wade* hearing that the defendant was not then wearing a goatee.

unable to identify the defendant at the trial. The prosecution conceded that the prior photographic identifications were improper, and Criminal Term, following the *Wade* hearing, ruled that they had not tainted the lineup identifications. The defendant urges that this ruling was erroneous, and that the lineup identifications, made in the absence of counsel, should have been excluded. This contention, in my view, is correct. Under the Federal rule, a person later accused of a crime is not entitled to counsel at a lineup prior to the institution of criminal proceedings against him *(Kirby v Illinois,* 406 US 682). The States are free, nonetheless, to adopt a rule imposing a higher standard than that required by the Federal Constitution (cf. *Oregon v Hass,* 420 US 714, 719; *Cooper v California,* 386 US 58, 62; *People v. Blake,* 35 NY2d 331, 336). Moreover, State courts most certainly can determine what type of State action constitutes the beginning of a proceeding against a person so that henceforth he is entitled to counsel at a police lineup. This the Court of Appeals has done. In *People v Sugden* (35 NY2d 453) the defendant, through a court order, was removed from jail (where he was serving a sentence on an unconnected conviction) to visit the scene of a crime. The Court of Appeals held (p 461) that the "court-ordered removal of defendant, who was unquestionably a 'target' of a police investigation, is sufficiently 'judicial' in nature, not unlike arraignment or the issuance of an arrest warrant, so that a right to counsel exists at 'critical stages' held after that order is issued". Here, the court-ordered removal of the defendant from jail to appear at a lineup similarly is sufficiently "judicial" in nature to entitle the defendant to the assistance of counsel. At the time of the lineup the defendant was clearly a target of police investigation, since Cassano and Cahill had identified him as the robber from the photographic viewing, and the detective testified that he had told the defendant at the time of the lineup that he was a suspect. Moreover, the defendant was not given notice by the police of the application for the order of removal, as he should have been (cf. *Matter of District Attorney of Kings County v Angelo G.,* 48 AD2d 576, 580, app dsmd 38 NY2d 923). On this record, it does not appear whether the defendant was represented by counsel with respect to the unrelated crime for which he was in custody; I do not, therefore, reach the question whether that counsel should have had notice of the application (cf. *People v Taylor,* 27 NY2d 327, 331). But the importance of counsel to be present at a lineup is not any longer the subject of debate (see *United States v Ash,* 413 US 300, 309–313; *People v Blake,* 35 NY2d 331, 335, *supra).* In this case, where the defendant at the lineup was observed in a setting susceptible of improper suggestiveness, the value of counsel at the lineup is manifest. Here, unlike the situation in *People v Blake (supra),* the lineup was held days after the robbery; the police had ample time to conduct a lineup in accordance with the standards of *United States v Wade* (388 US 218, *supra)* and *Gilbert v California* (388 US 263). The prosecution claims, however, that the defendant waived his right to counsel by his conduct at the lineup. It is pointed out that the defendant was told that he was entitled to counsel, and that he apparently did not desire an attorney. Doubtless, a defendant may waive the presence of a counsel at a lineup. Indeed, *United States v Wade* so holds *(supra,* p 237), citing *Carnley v Cochran* (369 US 506). But *Carnley v Cochran* declares (p 516) that the record must show that the accused was offered counsel, and intelligently and understandingly rejected the offer, a holding which is in accordance with the New York rule (see, e.g., *People v Paulin,* 25 NY2d 445, 450; *People v Weston,* 41 AD2d 423). A heavy burden rests on the prosecution to establish the waiver of counsel (see *Miranda v Arizona,* 384 US 436, 475). The circumstances here

do not provide positive evidence that the defendant affirmatively waived his right to counsel. First, the evidence shows no statement by the defendant, either oral or written, which denotes waiver. The detective who spoke to the defendant testified that he interpreted consecutive nods of the defendant's head as proof of an understanding of his right to counsel and as a refusal of counsel. I cannot accept evidence of an intelligent and understanding waiver on such an ambiguous and incomplete record. Second, it is significant that the defendant declined to sign a statement that he waived counsel. Hence, I do not reach the question whether, in any event, the defendant could waive counsel at the lineup, without proof that he consulted with counsel beforehand, and in the presence of counsel, expressly waived his right—a question left open in *People v Sugden* (35 NY2d 453, 461, *supra).* But it should be noted that a waiver of counsel usually arises only from express statements of the defendant himself which plainly disclaim any desire for counsel *(People v Hetherington,* 27 NY2d 242, 244; cf. *People v Vella,* 21 NY2d 249, 251). The identification of the defendant was by no means unclouded in the light of the testimony at the trial, and the identification procedures at the lineup were so strongly relied upon by the prosecution to support its case that it appears beyond a reasonable possibility that the impermissible lineup contributed to the defendant's conviction (see *People v Crimmins,* 36 NY2d 230, 237). For these reasons, the judgment of conviction must be reversed and a new trial ordered.

