Bentley Kassal, J.
After a Wade hearing to suppress identification evidence, the court determined that, under the totality of the circumstances, the pretrial identification procedure was not unfairly and unnecessarily suggestive and conducive to irreparable mistaken identification, so as to violate due process. (See, generally, Stovall v Denno, 388 US 293; People v Logan, 25 NY2d 184.)
The court then considered the issue of whether the absence of counsel at the lineup constituted a violation of defendant’s Fifth, Sixth or Fourteenth Amendment rights requiring suppression of all identification testimony.
FACTS
On the issue of the absence of counsel at the lineup, I find that these events occurred:
*199 September 8, 1976
On or before this date, the police obtained a court order directing the defendant, then incarcerated at Biker’s Island on another case, be produced for a lineup on September 8, at the 24th Precinct. At this time, the police notified the Legal Aid Society (which represented defendant on the charge for which he was then detained) of this lineup.
On September 8, the police received a telephone call from Jerry Wacks, a Legal Aid attorney, stating that he would represent the defendant at the lineup, but would be unable to attend that date.
That lineup was canceled and Mr. Wacks and a police officer agreed to another lineup on September 28.
September 28, 1976
The scheduled lineup was canceled due to the unavailability of a police officer.
October 6, 1976
The police called the Legal Aid Society and left a message for Mr. Wacks that the lineup would be held October 7.
Mr. Wacks called the police on October 6, told them he would be unable to attend on October 7, but agreed to be present on October 14 for a lineup.
Carl Stephen Hart, a criminal investigator employed by the Legal Aid Society, confirmed that Mr. Wacks instructed him on October 6 to be at a lineup on October 14.
October 8, 1976
Mr. Wacks spoke to his supervisor, Anthony Michaels, and asked to be relieved from representing the defendant at the October 14 lineup because he had misgivings about representing a defendant at multiple lineups. Mr Michaels relieved Mr. Wacks and told him that another attorney would be assigned.
Mr. Wacks called the 24th Precinct and left a message that he personally would no longer represent the defendant for a lineup.
October 13, 1976
A detective called Mr. Michaels and advised him of the problems he had trying to have a lineup. He told him the lineup would be held at 3:00 p.m. on October 14. Mr Michaels informed the detective that he would definitely have a Legal Aid attorney, Miss Regitsky, present at that time.
At 3:00 p.m. on October 13, Miss Regitsky appeared at the *200 24th Precinct and when told she was there a day early, stated she did not believe she could return on October 14. The police then asked her to inform the Legal Aid Society to have another attorney present on October 14.
October 14, 1976
Apparently as a result of a failure of communication within the Legal Aid Society, neither an attorney nor an investigator from the Legal Aid Society appeared at the 24th Precinct. The lineup was held, as scheduled.
Mr. Michaels, the Legal Aid supervisor, confirmed that Miss Regitsky had been told to be there on October 14. Miss Regitsky testified she advised Mr. Michaels or his secretary on the morning of the 14th of her inability to attend the lineup that afternoon.
Mr. Michaels has no recollection of this but does concede that the error in failing to attend was the fault of their office.
As a matter of fact, the Legal Aid investigator, who was specially trained in lineup procedure, was also scheduled to attend the October 14 lineup but he stated that his assignment was changed by his supervisor on October 12 when he was told the October 14 lineup had been canceled.
RIGHT TO COUNSEL AT LINEUP
As a general rule, the right to counsel at a lineup does not attach before the initiation of "adversary judicial criminal proceedings”, which has been interpreted as the filing of an accusatory instrument. (People v Blake, 35 NY2d 331, 339-340; Kirby v Illinois, 406 US 682, 688.)
It has been argued that an exception to this rule exists where, as here, the lineup occurs pursuant to a court-ordered removal of the defendant from jail where he is being held on an unrelated matter. (See dissent of Hopkins and Shapiro, JJ., in People v Coleman, 51 AD2d 1058, 1060.)
Further, where the prosecution is aware that the defendant is represented by counsel, the right to counsel may attach at an earlier stage in the criminal process. (People v Blake, supra, p 338; see, also, People v Ramos, 40 NY2d 610, 618.) In this case, the police were aware that an attorney from the Legal Aid Society represented the defendant in relation to the other independent charges for which he was already incarcerated. In fact, Detective Johnson, before arranging for the lineup, communicated with the Legal Aid Society to advise *201 them and was informed that an attorney would be present there. Obviously, the appearance of this attorney at a hearing on the order of removal (which did not involve the unrelated prior criminal proceeding), indicated his representation of the defendant for the purposes of the instant lineup.
While there was some ambiguity as to the substitution of the original attorney by another Legal Aid attorney, the police were aware that the Legal Aid Society, through one of its attorneys, had undertaken the task of having an attorney present at the lineup. Under these facts, defendant’s right to counsel attached, regardless of whether the lineup was to occur before the initiation of "adversary criminal proceedings” or whether counsel had been formally retained or assigned.
WAIVER OF COUNSEL
While the defendant’s right to counsel had attached, this right could be waived. (See United States v Wade, 388 US 218, 237.) Waiver of the constitutional right to counsel by a defendant must, of course, be knowingly, voluntarily and intelligently made. (See, e.g., Miranda v Arizona, 384 US 436, 475.) The prosecution must meet a heavy burden in proving a defendant’s waiver, establishing beyond a. reasonable doubt that it was voluntarily made. (Miranda v Arizona, supra; see, also, People v Huntley, 15 NY2d 72, 78.) Finally, where, as here, the defendant is represented by counsel, he may not waive the right to counsel except in the presence of his attorney. (People v Hobson, 39 NY2d 479.)
The question that remains, for which there appears to be no authority is whether a defense attorney, out of his client’s presence and without any affirmative waiver by his client, may waive his client’s right to an attorney at a lineup.
Unlike the prior discussion, there is no analogy here to the waiver of counsel at an interrogation, since the Fifth Amendment absolutely prevents interrogation of a defendant without his consent. However, neither United States v Wade (supra), nor any other authority requires similar consent before a defendant can be compelled to participate in a lineup. (Cf. Schmerber v California, 384 US 757, 761.)
Whether or not there is a hierarchy of constitutional rights, the methods constructed to enforce those rights may differ. In this regard, it is indisputable that the role of an attorney in protecting his client’s constitutional rights is more critical at *202 an interrogation than in a lineup. As stated in People v Hobson (supra, p 485): "Surely, the need for and right to a lawyer at an identification lineup is insignificant compared to the need in an ensuing interrogation.”
This important difference was recognized by the Supreme Court in Stovall v Denno (388 US 293, supra). In adopting the Wade-Gilbert rules to minimize the possibility of mistaken identification, the court balanced the right to counsel against the impact its decision would have on the orderly administration of the criminal justice system. It then held Wade-Gilbert rulings on the right to counsel at a lineup, unlike prior rulings on right to counsel at other stages of the prosecution, need not be retroactively applied. (Stovall v Denno, supra, pp 297-298.)
More recently, after the Supreme Court clearly limited the right to counsel at lineups to exclude those lineups occurring before criminal proceedings (formal charge, preliminary hearing, indictment, information, arraignment, etc.) had been initiated (Kirby v Illinois, 406 US 682, 688-689, supra) our Court of Appeals was called upon to determine whether the State Constitution afforded broader rights. (People v Blake, 35 NY2d 331, 336, supra.)
In that decision, the Court of Appeals noted that, even under pre-Kirby interpretations, the right to counsel had not governed on-the-scene viewings or where exigent circumstances existed as where the witness was believed to be in extremis, or, merely in the hospital. (People v Blake, supra, p 337.) The court then stated:
"The limited benefits obtained by counsel’s relatively passive presence at identification viewings must be balanced against countervailing policy considerations. Failure of a witness’ memory is directly related to the passage of time between first visual impression and later efforts to recall * * * Delay may prove fatal to a witness’ ability to recall. * * * Thus, the importance of staging a prompt viewing is paramount to the desirability of counsel’s presence at such identifications, if delay is involved. * * *
"The value of allowing or providing counsel to defendants at viewings is therefore circumscribed by the factors last discussed.” (Citations omitted.)
Having presided over several Wade hearings, I have become aware of other policy considerations that should be included in this formula. A fair and proper corporeal lineup obviously *203 takes a good deal of co-ordination and preparation. Not only must the witness and the potential defendant be present, but arrangements must be made to assure that other lineup participants are present, sufficiently similar in appearance so that there will be no unfair suggestiveness in the array. The rescheduling of such a lineup, therefore, requires substantial effort and may result in extensive delay.
Further, beyond the effect of delay on a witness’ memory described in People v Blake (supra), I am mindful of the fact that many identifying witnesses, when asked to appear on numerous occasions, decide that the discomfort and inconvenience of a number of appearances outweighs their duty to appear, identify and testify.
GENERAL POLICY CONSIDERATION
In evaluating the specific fact pattern presented on this motion, countervailing policy considerations affecting pretrial lineups in general must be weighed. The rights of both the defendant and the People must be scrupulously protected.
Here, attorneys for the defendant had already obtained more than one adjournment and may have sought further adjournments or failed to appear at subsequent lineups, if the lineup had not been held as scheduled. In view of this situation, to hold that the defendant has an absolute right to counsel at a lineup might encourage further delay by defense counsel as an intentional tactic with the prospect that either (1) the passage of time would so diminish the acuity of the witness’ memory that no effective identification would be possible; or (2) a lineup might finally be held in absence of defense counsel which would fatally preclude the possibility of in-court testimony of the pretrial identification (assuming it to be otherwise admissible).
Finally, an equally critical policy consideration is that a prompt lineup may be helpful in exonerating the innocent persons who are the subjects of the lineup, at the earliest possible point. (See People v Blake, supra, p 337.)
CONCLUSION
While it might possibly have been preferable to have notified the Legal Aid Society to give them another opportunity to send an attorney to the lineup on or after October 14, 1976, I do not find that the failure to do so, with the fact pattern *204 involved, fatally tainted the identification. More than sufficient notice was given to defense counsel and more than one adjournment at their request had already been granted. Under these circumstances, the failure of counsel to be present, whether the result of intentional design, inadvertent "law office failure” or otherwise, should not defeat the People’s right to a prompt lineup.
A judiciary which is duly concerned that delay may impair a defendant’s ability to produce witnesses (see People v Taranovich, 37 NY2d 442, 446-447) cannot ignore the fact that similar problems may confront the prosecution.
I find that the People have met their burden of demonstrating good cause for holding the lineup in the absence of defense counsel and the motion to suppress is denied in all respects.
In view of the close question presented, the lack of prior authority, and in the interest of judicial expediency, the court thereafter held a further hearing at which it determined that the witness had a basis for identifying the defendant, independent of the lineup. (See United States v Wade, 388 US 218, 240, supra; People v Burwell, 26 NY2d 331, 336; People v Logan, 25 NY2d 184, 191, supra; People v Underwood, 43 AD2d 800.)