Florence M. Kelley, J.
While in custody and awaiting trial on an unrelated matter, a photograph of the defendant, Andrew Styles, was selected from a photographic array by two individuals, at separate viewings. He was identified as the perpetrator of a rape[1] and robbery committed on June 26, n 1976. Mr. Styles was charged with the robbery after the complainant, Mr. Hatch, identified him at a corporeal lineup. The defendant moved to suppress both the lineup identifica *862 tian and the in-court identification. After a hearing and oral argument the motion is denied in all respects.
THE OUT-OF-COURT IDENTIFICATIONS
The defendant was first scheduled to appear in a corporeal lineup on August 12, 1976. The accused’s attorney, Mr. Hervey of the Legal Aid Society, was notified of the District Attorney’s intention to conduct the lineup and he appeared at the designated time and place. The lineup did not take place because of a difficulty in obtaining stand-ins and the absence of Mr. Hatch. Soon thereafter a second date, August 19, was set but postponed when it was discovered that defense counsel was on vacation. Hervey’s supervisor advised the prosecutor, Mr. Edwards, of Hervey’s absence. Edwards then asked that substitute counsel be designated for the lineup but withdrew that request after agreeing with Hervey’s supervisor that "Mr. Styles wasn’t going anywhere.”[2]
The lineup was rescheduled for September 9 but postponed again when it was determined that Hatch was not available.
On September 10, Mr. Edwards sought and received an ex parte order directing that the defendant be brought to the New York County District Attorney’s office[3] on September 15, 1976 in order to appear in a lineup. No attempt was made to clear this date with defense counsel and Mr. Edwards is unsure whether the complainant had agreed in advance to this date.
Mr. Edwards notified Mr. Hervey of the order on the following day. Hervey suggested another date be set because he anticipated that he would be engaged in a trial on September 15. Mr. Edwards, who by then was aware of Mr. Hatch’s displeasure at the slow pace of the case, suggested that Mr. Hervey arrange for substitute counsel. Mr. Hervey failed to obtain a substitute and was, in fact, engaged in a trial on September 15.
According to Mr. Hervey’s supervisor, who is an attorney himself, there were at that time approximately 100 to 120 attorneys in the Legal Aid Society Manhattan Criminal Defense Division, 30 of whom were in the unit he supervised. He o *863 testified that it would not be consistent with office policy to assign another attorney to represent a client at a lineup in place of a colleague who had previously accepted responsibility for the case. Furthermore, he testified that due to an intensified arraignment schedule and vacations there was less than a full complement of attorneys available on September 15.
Shortly after 9:00 a.m. on September 15 Mr. Edwards called Mr. Hervey to confirm that the lineup would go forward as planned. Hervey advised him that he was on trial and that he expected the scheduled summations and charge would prevent his appearing at the lineup that morning. Assistant District Attorney Kindler, Mr. Edwards’ supervisor, contacted Mr. Hervey’s supervisor shortly after 10:00 a.m. and asked him to send substitute counsel to the lineup which he would delay until 11:00 a.m. Hervey’s supervisor claimed that this was inadequate notice. Thereafter, Kindler stated that at 1:00 p.m., the customary court luncheon recess time, the lineup would go forward whether or not the defendant had counsel present. Hervey’s supervisor replied, in substance, that the District Attorney’s office should do what it had to but that "[he] was not waiving any rights.”
Other than placing a note in Mr. Hervey’s message box to inform him of the 1:00 p.m. lineup Hervey’s supervisor made no other effort to assure that Styles would have counsel at the lineup.
At approximately 1:40 p.m. Hervey’s supervisor and several associates "fortuitously” met Mr. Hervey as he left the 100 Centre Street court complex. The trial had just concluded. His supervisor advised him of the 1:00 p.m. lineup but Mr. Hervey, assuming that it was too late to attend, returned to the Legal Aid Society office — a short walk from the court building. The lineup commenced at 1:50 p.m. The complainant identified the defendant as the individual who robbed him. Shortly thereafter, Mr. Styles was formally arrested and charged with the robbery.
On August 12, 1976, Hervey advised Styles not to participate in a lineup unless he was there to assist him. The accused’s behavior at the lineup can be explained as an attempt to comply with this advice. Investigator Comiskey of the New York County District Attorney’s office was in charge of conducting the lineup. He testified that Mr. Styles requested counsel. The investigator was in the same room as the *864 defendant and the stand-ins when Mr. Hatch, who was in an adjacent room, identified the defendant through a one-way glass. The defendant refused to stand. Consequently, Comiskey directed the stand-ins to remain seated. The defendant leaned forward at times and when Comiskey photographed the group he was looking away. The photograph[4] indicates that the stand-ins provided a fair test of Hatch’s ability to identify his assailant.
Investigator Comiskey advised Mr. Styles to remain still in an effort to prevent Styles from drawing attention to himself. Nonetheless Styles continued to hold his head down while others conversed among themselves and, thereby, distinguished himself from the group. The complainant immediately passed over the stand-ins and fixed his attention on the defendant. He then asked that Styles, who was at that time looking down, be directed to stand up so that he could have a clear view of his face. Mr. Edwards replied that this could not be done. Styles then looked up and Hatch confirmed that the defendant was the man who had robbed him.
On or about July 23, 1976, the complainant had selected a photo of Styles from a group of six or eight pictures exhibited by Detective Valois. Valois testified that the photos, probably affixed to a single manila folder, were a group of pictures consisting of black males whose facial characteristics were similiar to the defendant’s. These pictures were misplaced in transferring the case to Detective Smith. The complainant may have been told that a suspect was in custody but the court finds no taint in the photo identification procedure.
Mr. Hatch testified that the rape and robbery were conducted over a period of at least 20 minutes. For several minutes he had an opportunity to observe Styles in adequate light from a distance of less than eight feet. Although Hatch’s testimony confirmed Comiskey’s observation that the defendant did distinguish himself from the others at the lineup, Hatch stated that this had no bearing on the identification he made. The court accepts Hatch’s statement as accurate given the protracted period of time he had to observe the robber.
THE LAW
Prior to Kirby v Illinois (406 US 682) (hereinafter referred to as Kirby) it was thought that the rules enunciated in *865 United States v Wade (388 US 218) were applicable to both pre- and post-indictment lineups.[5] But Kirby held that the Sixth Amendment right to counsel attaches "only at or after the time that adversary judicial proceedings have been initiated”. (Kirby v Illinois, supra, p 688.)
In New York it is settled that the rule announced in Kirby is applicable to all lineups which occur after the filing of an "accusatory instrument”. (People v Blake, 35 NY2d 331, 339, hereinafter referred to as Blake). The court went on to consider, with regard to the issues raised in Kirby, whether this State’s counterpart of the Sixth Amendment right to counsel[6] should continue to be applied more liberally than the Supreme Court’s view of the Federally secured right. Chief Judge Breitel, writing for the unanimous court, decided that the "rich development under the State’s Constitution” of the right to counsel should continue. (People v Blake, supra, p 338.) The court demonstrated its commitment to this view by employing its earlier right to counsel cases[7] as support for an expansion of that right into the area of pre-arrest corporeal lineups. In parts relevant to this case Blake held that: "When an accused, at any stage, before or after arraignment, to the knowledge of the law enforcement agencies, already has counsel, his right or access to counsel may not be denied”. (People v Blake, supra, p 338.)
"[0]nce the general right to counsel attaches in a criminal context, even if defendant has not yet obtained or received a court-assigned lawyer, the right to have counsel present, where appropriate, at subsequent procedures such as a corporeal identification viewing, also exists. In all such situations should the right or access to counsel be denied, without sufficient excuse or explanation establishing an inevitable exigency, an identification should be excluded.” (People v Blake, supra, p 339.)
In summary the court concluded that: "Where the accused has counsel known to the law enforcement authorities * * * and he has not waived the right to counsel, the circumstances may establish his right to counsel at the viewing, the breach of which should result in exclusion.” (People v Blake, supra, pp 340-341.)
Examples of circumstances allowing for a relaxation of this *866 prophylactic rule were set forth. Where the complainant is in extremis, Stovall v Denno (388 US 293) or where a prompt identification would be delayed unduly by efforts to obtain counsel for the accused policy dictates that the "limited benefits obtained by counsel’s relatively passive presence at identification viewings” must give way. (People v Blake, supra, p 337.) Although a flexible legislative rule was called for by the Chief Judge, in the absence thereof a flexible decisional course should be developed. It would seem then that circumstances other than those suggested in Blake, could justify a departure from the per se exclusion of the complainant’s testimony concerning the out-of-court identification when the People elect to proceed with the lineup without defense counsel after the right to counsel had attached.
CONCLUSIONS OF LAW
The court finds that Mr. Styles’ right to counsel had attached prior to the September 15 lineup. Inasmuch as Investigator Comiskey testified that Styles requested that his counsel be called to the lineup this record cannot support a finding that the defendant waived the right to counsel.[8] It appears that a right of such fundamental importance cannot be waived unilaterally by counsel. (Cf. Henry v Mississippi, 379 US 443; but, see People v Poywing, 90 Misc 2d 197.)
The particular "narrowly-exigent circumstances” that Blake anticipated would allow for a departure from the per se exclusion of testimony concerning the identification made at the lineup are not presented herein. Yet if the rules announced in Blake are truly not going to impair the efficiency of law enforcement then the facts presented here, as in Poywing (supra), suggest the basis for another "pragmatic exception” to those rules.
Prior to securing a court order for the lineup the better practice would have been for the prosecutor to have first ascertained a date convenient to both the complainant and the defense. It is beyond dispute that an order may be obtained to compel the accused to appear in a lineup. (Schmerber v California, 384 US 757.) But neither Schmerber nor its progeny sanctions the practice of applying, ex parte, for an order concerning an individual who is known to be represented by *867 counsel. (Cf. Matter of District Attorney of Kings County v Angelo G., 48 AD2d 576, 577, app dmsd 38 NY2d 923.)
On balance, however, the prosecution’s efforts, taken as a whole, provided the Legal Aid Society with sufficient notice to cope with the likelihood of Mr. Hervey’s inability to attend the lineup by arranging to have substitute counsel there. Specifically, although the society had in excess of 72 hours to make contingency plans, nothing was done.
Furthermore, when advised on the morning of September 15 that no lawyer would be sent to assist Mr. Styles, the prosecution agreed to delay the lineup until 1:00 p.m. The society’s response to this further accommodation cannot be viewed as a serious effort to assure that Styles would have counsel at the lineup. The court is, therefore, compelled by this record of inaction to hold that the prosecution should not be penalized for the failure of the Legal Aid Society to provide Mr. Styles with substitute counsel. To rule otherwise would not merely sanction but reward unconscionable foot dragging and dogmatic adherence to office policy.[9]
In summary, the court finds that the lineup was not conducted in a manner which would require suppression of either the in-court identification or testimony concerning the identification made at the lineup.
In addition, the court finds that the People have demonstrated by clear and convincing evidence that there exists a sufficient basis, independent of the September 15 lineup, for the in-court identification of Mr. Styles by the complainant. In reaching this result the court principally relied on the extended period of time Mr. Hatch was able to view the assailant at close range and with adequate light during the criminal venture. Additionally, in reaching this result the over-all fairness of the out-of-court identifications and particularly Hatch’s quickly passing over virtual look-a-like stand-ins in *868 identifying the accused at the lineup was considered as well as other factors presented at the hearing.
Therefore, the motion is denied in all respects.

. The testimony at the hearing indicated that the victim of the rape, for personal reasons, elected not to press charges.

. He was then held, in lieu of posting bail, at the New York City House of Dentention for Men.

. The New York County District Attorney’s office is located within the 100 Centre Street Criminal Court complex.

. People’s Exhibit No. 2, deemed marked, in evidence.

. People v Oakley (28 NY2d 309, 312); People v Logan (25 NY2d 184,187).

. NY Const, art I, § 6.

. Citations omitted.

. Carnley v Cochran (369 US 506) was cited in Wade as the case setting forth the standards for finding that an accused had waived the right to counsel.

. The policy, known as continuity of representation, should not be disturbed by the courts. However, in the context of assisting an accused at a lineup, substitute counsel is preferable to the total surrender of all benefits of counsel. In fact, the Supreme Court anticipated this very problem. (United States v Wade, supra, p 237, n 27.) It must be borne in mind that unlike any other aspect of a criminal prosecution, counsel’s role at a lineup is most often passive. Furthermore, substitute counsel would be available to serve as a witness at later proceedings should the defense decide to challenge the fairness of the identification procedure before a hearing Judge or a jury. Thus, the awkward and ethical problem of an attorney caught in the dual role of witness and lawyer could be avoided. (Cf. People v Colon, NYLJ, June 13, 1977, p 11, col 2.)