Chief Judge Breitel.
Defendant appeals from convictions for criminal possession of stolen property in the first degree (Penal Law, § 165.50) and unauthorized use of a vehicle (Penal Law, § 165.05), after a jury trial. He was sentenced to probation on the stolen property charge and to a conditional discharge on the vehicle use charge.
The issue is whether identifications made by witnesses at prearraignment corporeal viewings of defendant absent counsel should be excluded.
The order of the Appellate Division affirming the convictions should be affirmed. Counsel at prearraignment viewings is not mandated in all circumstances, although often desirable. Consequently, uncounseled prearraignment viewings before the filing of an accusatory instrument do not invariably require exclusion of the identification thus obtained. Moreover, the question now presented was considered and determined adversely to defendant on his previous appeal.
In the early morning of October 19,1968, in the Bronx, Patrolmen Wieber and Barclay observed defendant Blake and three companions in a 1967 Chrysler automobile, which later investigation revealed had been stolen. When the car proceeded without stopping through a stop sign, the officers followed in their patrol car and caught up with the Chrysler at a red stop light. Officer Weiber signaled the driver to pull over to curbside. Although the driver nodded assent, the car sped off, with the *334 police in pursuit. During the four-block chase, Blake and a codefendant, Andrew Brown, exchanged gunfire with Officer Wieber. The chase ended when the Chrysler crashed into a parked automobile and its four occupants took off on foot. Three of the occupants, including defendant Blake, escaped, but Officer Barclay managed to capture one of the passengers, Oliver Ferguson.
With the help of information given by Ferguson, defendant was arrested on November 4, 1968. He was then placed in a Bronx Criminal Court detention cell with about 20 male- prisoners (all under 30 years of age, and 16 or 17 of whom were Negroes). After separately viewing the group, Officers Wieber and Barclay each identified defendant as one of the occupants of the Chrysler. The viewings took place approximately two hours after arrest. Defendant was arraigned shortly after. He was indicted on December 16, 1968.
Defendant was later convicted, after a jury trial, in Supreme Court, Bronx County, of criminal possession of stolen property and unauthorized use of the automobile. The Appellate Division reversed on the law alone and directed a new trial, on the ground that the in-court identifications by the officers were improperly bolstered by their own testimony of their detention-cell identification on the People’s direct case (37 A D 2d 831). This court reversed, holding that, since the identity of the defendant was in issue from the outset, the bolstering testimony was admissible under the statute on direct examination (32 N Y 2d 935; former Code Crim. Pro., § 393-b). On remand to the Appellate Division, for review of the facts, that court affirmed the convictions (42 A D 2d 954; CPL 470.40, subd. 2, par. [b] ; see CPL 470.25, subd. 2, par. [d]).
On the prior appeal to this court, it was necessary to determine whether the identification testimony was admissible at all, before considering whether it was admissible on the People’s direct case. That determination would be the law of the case, assuming, what is unlikely, that the law of the case should be applied in criminal matters against the defendant (see State v. Hale, 129 Mont. 449; State v. Phillips, 324 S. W. 2d 693). Even then extraordinary error or unfairness would require review de novo (cf. Cluff v. Day, 141 N. Y. 580, 582; Politi v. *335 Irvmar Realty Corp., 13 A D 2d 469; see, generally, 5 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 5011.09; 1 Carmody-Wait, 2d, N. Y. Practice, § 2:64 et seq.; Note, Law of the Case, 40 Col. L. Rev. 268, 269). In any event, the court reaches the same determination on the present appeal.
Prior to United States v. Wade (388 U. S. 218), Gilbert v. California (388 U. S. 263), and Stovall v. Denno (388 U. S. 293), counsel were not required at pretrial corporeal viewings of a defendant by identification witnesses. Such viewings were considered merely stages of police investigation (see Wade, supra, 388 U. S., at p. 227). In the Wade and Gilbert cases (supra), however, the Supreme Court, recognizing the dangers of misidentification and improper suggestion in such viewings, mandated the presence of counsel for the accused at postindictment identifications (see Gilbert v. California, 388 U. S. 263, 272, supra).
Although the Wade-Gilbert rationale seemed equally applicable to preindictment identifications, the Supreme Court in Kirby v. Illinois (406 U. S. 682) held that the Sixth Amendment right to counsel attaches “ only at or after the time that adversary judicial criminal proceedings have been initiated ” (p. 688). The court offered “ formal charge, preliminary hearing, indictment, information, or arraignment ” as examples (p. 689).
Both the Federal and State Constitutions guarantee an accused the right to counsel to aid in his defense (U. S. Const., 6th and 14th Arndts.; N. Y. Const., art. I, § 6). Although framed in more restrictive terms,[1] the right to counsel under the State Constitution has, in some areas, been interpreted more expansively than under the Fifth and Sixth Amendments as interpreted by the Supreme Court (compare, e.g., People ex rel. Donohoe v. Montanye, 35 N Y 2d 221; People v. Arthur, 22 N Y 2d 325; People v. Malloy, 22 N Y 2d 559; People v. Bodie, 16 N Y 2d 275; People v. Friedlander, 16 N Y 2d 248; People v. Gunner, 15 N Y 2d 226; People v. Donovan, 13 N Y 2d 148; People v. Rodriguez, 11 N Y 2d 279; People v. Meyer, 11 N Y 2d 162; *336 People v. Waterman, 9 N Y 2d 561; People v. Di Biasi, 7 N Y 2d 544; with Gagnon v. Scarpelli, 411 U. S. 778; Miranda v. Arizona, 384 U. S. 436; Escobedo v. Illinois, 378 U. S. 478; Massiah v. United States, 377 U. S. 201; Crooker v. California, 357 U. S. 433). A significant number of the State cases antedate the Federal cases.
Prior to the Kirby case, this court, acting under what was logically considered to be the constraint of the Wade-Gilbert rules, accepted, without further analysis, their application to prearraignment viewings (see People v. Oakley, 28 N Y 2d 309, 312; People v. Logan, 25 N Y 2d 184, 187; cf. People v. Harrington, 29 N Y 2d 498, 500 [Burke, J., dissenting]; People v. Rahming, 26 N Y 2d 411, 417). The State courts would continue, of course, to be bound by the Wade-Gilbert rules in requiring counsel at viewings after the onset of adversary judicial proceedings. This court, however, is now free to evaluate independently the necessity of mandating, under the State Constitution as it interprets it, the presence of counsel at prearraignment viewings, as a derivative of the right to counsel without traversing the necessarily vague and elusive byways of the constitutional right to due process (see Grano, Kirby, Biggers and Ash: Do any Constitutional Safeguards Remain Against the Danger of Convicting the Innocent?, 72 Mich. L. Rev. 719, 742-755).
Obviously, it would be a fine protection to defendants in criminal cases if they had counsel at every stage of investigation and the ensuing judicial proceeding. Equally obvious is it that such an arrangement would be impractical. The enforcement of laws against crimes is in no way parallel to civil proceedings. Crimes, arrests, and detentions of alleged wrongdoers often occur in the context of violence, flight, pursuit, apprehension, and urgencies involving danger to life and limb. No planned scenarios are possible or desirable. There is trenchant need for quick verification of identity, cause for arrest and detention, and the desirability of early or even immediate release of those falsely accused of crime.
Even while it was thought that the Wade-Gilbert rules applied to prearraignment viewings, there were exempted viewings on the scene and immediately after the commission of the crime *337 (People v. Logan, 25 N Y 2d 184, 193-194, supra; Russell v. United States, 408 F. 2d 1280, 1283-1284, cert. den. 395 U. S. 928). So, too, were exempted exigencies, such as, where the identifying witness was believed to be in extremis, or even, just in the hospital (Stovall v. Denno, 388 U. S. 293, 302, supra; People v. Rivera, 22 N Y 2d 453, 455; see, generally, A. L. I., Model Code of Pre-Arraignment Procedure [T. D. No. 6, 1974], § 160.2, subd. 1).
The limited benefits obtained by counel’s relatively passive presence at identification viewings must be balanced against countervailing policy considerations. Failure of a witness’ memory is directly related to the passage of time between first visual impression and later efforts to recall (see Russell v. United States, 408 F. 2d 1280, 1284, cert. den. 395 U. S. 928, supra). Delay may prove fatal to a witness’ ability to recall. Speedy viewings, on the scene if possible, benefit both law enforcement and the defendant (People v. Logan, 25 N Y 2d 184, 194, supra). If the accused is identified as the culprit, the witness’ recollection will be as fresh and reliable as his capacity and the situation permits. If the accused is not identified, he may then be released with a minimum of delay. Thus, the importance of staging a prompt viewing is paramount to the desirability of counsel’s presence at such identifications, if delay is involved. (See A. L. I., Model Code of Pre-Arraignment Procedure [T. D. No. 6, 1974], note to § 160.2.)
The value of allowing or providing counsel to defendants at viewings is therefore circumscribed by the factors last discussed. Moreover, the problem is not one facilely or best handled by the decisional process and invites flexible and studied legislative adjustment (see A. L. I., Model Code of Pre-Arraignment Procedure [T. D. No. 6, 1974], pp. 72-75, 202-203).
Comprehensive, carefully drafted police department regulations detailing procedures to be followed at identification viewings are useful in safeguarding the accused’s due process rights and indeed strengthening the prosecution on trial in establishing the identity of the culprit to the satisfaction of the fact-finder (see, e.g., N. Y. C. Police Dept. Regulations, Police “ Lineup ” For Identification [T. O. P. 318, July 26, 1967], reprpduced in Read, Lawyers at Lineups: Constitutional Necessity or Avoidable Extravagance?, 17 UCLA L. Rev. 339, 399; post- *338 Kirby, N. Y. C. Police Legal Division Bulletin, vol. 2, No. 15 [Nov. 13, 1972]; see, also, Read, at pp. 394-407 [regulations adopted by other governmental authorities]; see, generally, A. L. I., Model Code of Pre-Arraignment Procedure [T. D. No. 6, 1974], pp. 72-75, 202-203, ,286-312).[2]
Some basic principles nevertheless exist. They derive from constitutional standards and provide some guidance. The right to counsel in this State has had a rich development under the State’s Constitution. When an accused, at any stage, before or after arraignment, to the knowledge of the law enforcement agencies, already has counsel, his right or access to counsel may not be denied (see People v. Burwell, 26 N Y 2d 331, 336; People v. Gursey, 22 N Y 2d 224, 226; People v. Arthur, 22 N Y 2d 325, 328-339, supra; People v. Friedlander, 16 N Y 2d 248, 250-251, supra; People v. Donovan, 13 N Y 2d 148, 151, supra; People v. Rodriguez, 11 N Y 2d 279, 284, supra; People v. Meyer, 11 N Y 2d 162, 164, supra; People v. Waterman, 9 N Y2d 561, 565, supra; People v. Di Biasi, 7 N Y 2d 544, 549-551, supra; see, generally, Richardson, Evidence, pp. 541-551; A. L. I., Model Code of Pre-Arraignment Procedure [T. D. No. 6, 1974], § 160.3, subd. 1).
Belevant to the discussion to follow are certain distinctions which must be kept in mind. An accused or defendant may have the right to a lawyer generally to advise him, represent him, or act as an attorney in his behalf. An accused or defendant may have the right to have access to his lawyer or that his lawyer be allowed access to him. Lastly, an accused or defendant may be entitled specially to have a lawyer to protect his interests before or during some particular procedure or event in the context of the criminal proceedings in which he is enmeshed.
True, the rules have developed largely in connection with interrogation but they extend logically to allowing such counsel to be present when the accused is subjected to a corporeal identification viewing. The Burwell case (26 N Y 2d 331, supra) *339 involved a prearraignment lineup. There it was observed that, even without the mandate of the nonretroactive Wade-Gilbert rules, “ the failure to arrange for the presence at the lineup of a defendant’s lawyer, then seeking access to his client, is suggestive of a violation, in spirit at least, of the principles previously laid down by this court ” (26 N Y 2d, at p. 336). Interestingly, the Gursey case (22 N Y 2d 224, supra) did not involve interrogation or any other conduct subject to a privilege of a constitutional or other source. Instead, it involved the taking of a test for alcoholic intoxication which is no more privileged than the taking of a blood sample (see Schmerber v. California, 384 U. S. 757). Nevertheless, the right to counsel, readily available, was sustained.
Thus, under the above precedents, in this State, once the general right to counsel attaches in a criminal context, even if defendant has not yet obtained or received a court-assigned lawyer, the right to have counsel present, where appropriate, at subsequent proeeduers such as a corporeal identification viewing, also exists. In all such situations should the right or access to counsel be denied, without sufficient excuse or explanation establishing an inevitable exigency, an identification should be excluded.
Beyond the precedents in this State providing a right or access to counsel even before formal initiation of the criminal action, there is a Federally mandated right to have counsel present at any corporeal identification viewing held at or after the time when “ adversary judicial [criminal] proceedings have been initiated ” (Kirby v. Illinois, 406 U. S. 682, 688, supra).
For purposes of applying the Federal rule as now restated in the Kirby case (supra), in this State a criminal action begins with the filing of an “ accusatory instrument ” as defined by statute, which serves as the basis for prompt arraignment or issuance of a warrant of arrest (CPL 1.20, subd. 17; 100.05; 120.20, subd. 1; 170.10, subd. 1; 180.10, subd. 1; 570.08; see, also, OPL 170.10, subd. 3; 180.10, subd. 3, granting right to counsel at arraignment; cf. United States ex rel. Robinson v. Zelker, 468 F. 2d 159, 163; but see People v. Stockford, 24 N Y 2d 146, applying a different rule to arrest warrants issued under the former Code of Criminal Procedure). It is at this point that *340 “ adversary judicial criminal proceedings ”, within the meaning of the Kirby case, are initiated. Consequently, upon the filing of an accusatory instrument, whether or not a lawyer has been retained or assigned for general purposes, there may not be, except in exigent circumstances, a corporeal viewing of the defendant for identification purposes in the absence of counsel (cf. A. L. I., Model Code of Pre-Arraignment Prodecure [T. D. No. 6, 1974], § 160.3, subd. 2).
Since such a rule offers opportunity for delay between arrest and the filing of an accusatory instrument, an undue delay is prima facie a suspect circumstance suggesting that the delay may have been for the purpose of depriving the accused of counsel at a viewing. In that event, the prosecution would have the burden to explain and offer proof on the pretrial identification hearing, if one is had, why the opportunity to so have counsel at the viewing was not afforded.
Beyond the right to counsel it is still good law that any improperly suggestive viewing at any time may constitute a violation of due process of law (see Stovall v. Denno, 388 U. S. 293, 301-302, supra; People v. Ballott, 20 N Y 2d 600, 606; cf. People v. Brown, 20 N Y 2d 238, 243).
The viewings in the instant case, notably by police officers, took place approximately two hours after defendant’s arrest but prior to his arraignment. Thus, the police officers’ detention-cell identifications did not violate defendant’s right to counsel under the State Constitution, and were properly admissible on the People’s direct case. The viewings, although not in strict accordance with the then applicable police department regulations, were not so suggestive or unfair as to violate due process.
In summary, the presence of counsel at identification viewings is mandated after the filing of an accusatory instrument on pain of exclusion of the identification, except in narrowly-exigent circumstances. After arrest but before the filing of an accusatory instrument the presence of counsel is not mandated, but is desirable. Where the accused has counsel known to the law enforcement authorities or there is insufficiently explained delay which prevents him from obtaining counsel as he would on arraignment, and he has not waived the right to counsel, the *341 circumstances may establish his right to counsel at the viewing, the breach of which should result in exclusion.
The rules will not impair the efficiency of law enforcement, especially in the light of the pragmatic exceptions noted above. Indeed, the benefits to the prosecution of sound aseptic practice in the conduct of viewings of suspects are marked. Even with the limited role played by counsel at identification viewings, when, presence of counsel is required, remediable objections or practical suggestions may remove the later trial time-consuming and doubt-raising concerns about the integrity of the identifications.
Accordingly, the order of the Appellate Division should be affirmed.
Judges Jasen, Gabrielli, Jones, Wachtler, Rabin and Stevens concur.
O^der affirmed.

. "In all criminal prosecutions, the accused shall enjoy the right c * 13 to have the Assistance of Counsel for his defence.” (U. S. Const., 6th Amdt.)
“In any trial in any court whatever the party accused shall be allowed to appear and defend in person and with counsel as in civil actions.” (N. Y. Const., art. I, § 6.)

. Highly imaginative suggestions, such as judicial participation in identification viewings and preserving permanent records of these viewings, possibly by videotape, deserve further exploration (see, e.g., A. L. I., Model Code of Pre-Arraignment Procedure [T. D. No. 6,1974], pp. 83, 210; Grano, Kirby, Biggers and Ash: Do Any Constitutional Safeguards Remain Against the Danger of Convicting the Innocent?, 72 Mich. L. Rev. 719, 721).