Dennis Edwards, Jr., J.
This court must determine the propriety of a lineup conducted without defense counsel present. It took place prior to the defendant’s arraignment, but after his arrest, on a robbery charge. However, at that time the defendant already had been arraigned on a grand larceny and criminal possession of stolen property complaint involving the same property.
At a Wade hearing held before this court, Assistant District Attorney Regina Felton, Police Officer William McNeill and trial preparation assistant Samuel Jacob Mark testified for the People. Alan Farbman, an attorney employed by the Legal Aid Society, was called by the defense. In addition, a District Attorney’s investigation bureau report, a photograph of the lineup, and the court order appointing defendant’s present attorney were received in evidence. Counsel for both sides asked the court to take judicial notice of the criminal court papers on file in this case. Based upon the foregoing, the court finds the facts as follows:
On September 9, 1975, at about 3:30 a.m., Police Officer William McNeill arrested the defendant and Arthur Fields for grand larceny and criminal possession of stolen property for riding in an automobile previously reported stolen.
McNeill contacted Emile James — the owner of the car — by telephone and met him in the courthouse at about 9:00 a.m. Upon interviewing the complainant, the officer learned that the car and some money had been seized by two males *548 wielding a knife and a gun on September 6, 1975 at about 11:00 p.m. James gave McNeill his assailants’ description, which fit the defendant and Fields.
The next day, at about noon, the defendant and Fields were arraigned. Alan Farbman represented both men. At his request, the court appointed an 18-b attorney for the defendant and relieved The Legal Aid Society. An Assistant District Attorney told the Judge that the police planned to arrest defendant and Fields for robbery. They were paroled and rearrested in the courtroom.
McNeill briefed Regina Felton, who was in charge of the District Attorney’s lineup program, the following morning. Believing that Farbman represented the defendant and Fields, she attempted to contact him by telephone and left 10 messages in his office and various trial parts. Samuel Mark also called Farbman’s office several times and left word with his secretary. Sometime in the early afternoon, Felton spoke with Farbman. He informed her that he had represented the defendant only for arraignment, was engaged in a meeting, and would not attend a lineup.
After this conversation Felton found out that the previous day’s arraignment had not been for the robbery charge. She had been prepared to go ahead with the lineup in the morning and now considered the procedure to be prearraignment in nature. Accordingly, she held a lineup at which the complainant viewed Fields and several others and was unable to make an identification.
At 4:05 p.m. Samuel Mark conducted a lineup involving the defendant. Mark allowed the defendant to select the stand-ins from a group of 6 to 8 people and to choose his own spot and number. Because of variations in the participants’ heights, everyone sat down during the lineup. Defendant was given the opportunity, and exercised it, to have the stand-ins remove any article of clothing or jewelry which might make them stand out.
A photograph of the lineup shows five black males with short dark hair. Any differences in their heights are not readily discernible as they are seated. When arrested, the defendant gave his height as 5 feet 10 inches and his age as 19. The four other men were 5 feet 5 inches, 6 feet IV2 inches, 5 feet 9 inches and 5 feet 9 inches, respectively, and 22, 18, 20 and 21 years old.
James viewed the lineup through a two-way mirror which *549 prevented the participants from seeing him. Mark and Mc-Neill were also present. They told James to tell them if he sees anyone whom he knows, but that he should not feel guilty, if he recognizes no one. James identified the defendant after 15 to 20 seconds.
Upon completion of the lineup, a robbery complaint was drafted. The next day defendant was arraigned and his present attorney was assigned to the case. Five days later, he filed a notice of appearance.
The instant indictment charges defendant with robbery in the first degree and related crimes resulting from the September 6 incident involving Emile James and the September 9 arrest while allegedly in possession of James’ automobile.
Three key issues confront the court: Did the defendant have a right to have counsel present at the lineup? Should a lineup have been held? Did the District Attorney’s office conduct the lineup properly?
Preliminarily, it should be noted that the existence of probable cause for the robbery arrest has not been disputed. Indeed, the officer’s duty to arrest clearly emerged upon his learning that three days earlier two males, fitting the descriptions of defendant and Fields, had forcibly taken the car they were driving when apprehended. The delay in the robbery arraignment, likewise, has not been cited as a by-product of the lineup. Considering the large time span between the original arrest and the arraignment thereon, the additional time lapse between the lineup and the robbery arraignment, and the court’s familiarity with New York County arraignment procedures, such waiting appears to be the common rule, rather than the exception.
The right to counsel at a corporeal identification procedure attaches upon the filing of an accusatory instrument (People v Blake, 35 NY2d 331, 339-340). Here, the lineup preceded the robbery arraignment. However, defendant argues that the prior arraignment on criminal possession of stolen property and grand larceny charges rendered the lineup without counsel invalid. This court rejects that claim.
The sole connection between the crime of criminal possession of stolen property and robbery is the common automobile involved. The relevant statutes prohibit two independent and separate transactions — the forcible taking of property from another person and the knowing possession of stolen property, respectively. The two crimes occurred three days apart and *550 contain no identical elements. Whereas the robbery terminated on September 6, the evidence of the criminal possession charges commenced with the sighting of defendant by the police in a stolen car on September 9.
The offenses listed in the original complaint are grand larceny, criminal possession of stolen property and unauthorized use of a vehicle — the trilogy generally charged in this type of case. The insertion of grand larceny stems from an inability to predict with certainty the proof which will unfold at trial. Within the factual allegations of the complaint, no act of larceny is spelled out. Thus, the inclusion of this offense therein is not controlling in determining the right to counsel at the lineup. Meanwhile, the robbery complaint only concerns itself with the knife-point taking of a car and other property from Emile James on September 6. In short, the factual averments of the respective accusatory instruments do not significantly overlap.
The dichotomy between the charges in the two complaints becomes more glaring upon the realization that without James’ identification, the robbery charges could not be sustained (cf. People v Waterman, 9 NY2d 561, 565). Here, the robbery was still in the investigative stage, albeit two suspects had been focused upon. On the other hand, for police purposes, the crime of criminal possession of stolen property had been solved.
Of course, while it cannot be denied that the respective crimes involve common property, the lineup was not conducted as part of the proceedings for the "specific charges” for which defendant was arraigned (People v Taylor, 27 NY2d 327, 332). That the charges may be "interwoven” to some extent does not invoke a right to counsel on the unarraigned charge (People v Simmons, 22 NY2d 533, 540).
In People v Stanley (15 NY2d 30, 32), the defendant pleaded not guilty to a Federal indictment accusing him of "inducing Schermond to transport money across state lines in order to defraud him of that money.” Upon his release on bail, the New York City police immediately took Stanley into custody, questioned him in the absence of counsel, and obtained statements subsequently received in evidence. Stanley was convicted of grand larceny in the first degree. The court held that in view of the "bona fides of the Federal proceedings,” the interrogation without an attorney was proper (pp 32-33).
Defendant cites People v Vella (21 NY2d 249) in support of *551 his position. There, the defendant was arraigned in the New York City Criminal Court for criminally receiving stolen property. Counsel was assigned and the matter was adjourned. New York State Police arrested Vella in the courtroom and turned him over to the Suffolk County Police. They interrogated him about a burglary of a Suffolk County home and to theft therefrom of the property involved in the New York County case. The court found such questioning impermissible and reversed the conviction.
Three factors present in Vella distinguish it and render its holding inapplicable here. Before questioning the defendant, the police failed to so notify assigned counsel, whose existence was known to them and who was present in court when defendant was taken into custody (see People v Blake, supra, p 338). The arrest was "a contrivance or pretext for further investigation” (Vella, 28 AD2d 563, 564 supra [dissenting opn, Hopkins, J.]). The larceny and receiving charges were part of the same act in that "the statement obtained from defendant could consequently be used in either prosecution, depending on whether its contents implicated him as burglar or receiver” (id.).
In addition, because of differences between a confession and a lineup, circumstances may exist which entitle a suspect to counsel at his interrogation by the police, but not at his viewing by witnesses to a crime. A confession is testimonial in nature. It can never be compelled. Questioning must cease when a suspect requests counsel. If in custody, a person cannot be interviewed without being advised of his Miranda rights. An attorney is often crucial at that stage of a proceeding. Standing in a lineup is not testimonial in nature. Upon a proper showing, it can be judicially ordered. An attorney’s "passive presence” provides "limited benefits” (People v Blake, supra, p 337). After the filing of an accusatory instrument, a defendant cannot be questioned without counsel, although he may be subjected to a corporeal viewing, regardless of his desires and in the absence of his attorney, under exigent circumstances (id., p 340).
In sum, the acts of September 9 and 6 are sufficiently distinct, so that the arraignment for criminal possession of stolen property did not mandate the presence of counsel at the robbery lineup.
When the police and prosecutor received reasonable cause to believe that defendant and Fields had robbed James, it *552 became imperative to conduct an identification procedure as soon as possible. Delay would have benefited neither the People nor the suspects. In fact, the prompt action quickly cleared Fields of the robbery (People v Morales, 37 NY2d 262, 272; People v Blake, supra, p 337). The alternatives were varied and included a photographic display, a showup and an in-court viewing at the initial arraignment. Of course, no right to counsel would have attached to any of these undisputedly prearraignment methods (see, also, United States v Ash, 413 US 300). The District Attorney adopted the best means available of testing identification — a lineup. Moreover, while temporarily under the misapprehension that defendant had been arraigned on the robbery charges, the Assistant District Attorney sought to secure his attorney’s presence. Only after learning otherwise, did the viewing take place without an attorney. The good faith of the prosecutor in this proceeding cannot be challenged.
Finally, the testimony at the hearing, the report in evidence, and the photograph of the lineup establish that the District Attorney’s office held a fair and nonsuggestive viewing. The stand-ins and defendant were sufficiently similar in physical appearance to provide a fair test of James’ ability to point out his assailant. Nothing suggestive was related to James and he was under no pressure to identify someone.
As a result of the defendant’s failure to show any impropriety in the identification procedure employed and the court’s finding that the viewing was fair and nonsuggestive, it is unnecessary to decide whether an in-court identification would have a basis independent of the lineup.
Therefore, defendant’s motion to suppress identification testimony is in all respects denied.