■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DONALD M. SULESKI, Appellant. (Appeal No. 1.)—Judgment unanimously affirmed. Memorandum: Defendant was convicted on October 12, 1976 of sexual abuse in the first degree, sodomy in the first degree and attempted rape in the first degree of a 13-year-old girl, "Y", on June 8, 1974, and of sexual abuse on July 17, 1974 of an 11-year-old girl, "K". On August 14, 1974 he was arrested in connection with an assault upon another girl in an area near where the other two crimes occurred. On the next morning the police

conducted a line-up viewing of defendant along with five other men. Twelve alleged victims of attacks of this nature were brought to the police station to view the line-ups. Five of these persons identified defendant in two different line-up viewings. Y and K, acting independently, each identified defendant; and defendant was then indicted for the above crimes. A *Wade* hearing was conducted in June, 1975 with respect to the identifications made in these line-ups, and the hearing was reopened and concluded in April, 1976. Thereafter the court granted portions of defendant's motion to suppress, but denied the motion completely with respect to the identifications made by Y and K. Defendant contends that the line-ups were suggestive and improper for a number of reasons, and that the evidence thereof with respect to Y and K should also have been suppressed. When questioned before the line-up viewings, defendant responded that he had no attorney. The police, therefore, arranged to have an attorney appear in his behalf to observe the line-up, and counsel did so. Photographs of the line-ups show that five of the six men, including defendant, wore white shirts and dark trousers, although defendant's trousers were made of denim and those worn by the others were not. The sixth participant wore a light colored shirt and white trousers. The attorney advised defendant that he was there to witness the line-up; he took notes during the viewings and was prepared to testify concerning the line-up. He observed that defendant appeared to be frightened. At the line-ups both Y and K identified defendant twice. Defendant assumed a different position and wore a different number in each viewing. In addition, prior to defendant's arrest K had described her attacker to the police, and she made a composite picture of him based upon that description. It turned out to be a remarkable likeness of defendant. Upon the trial, defendant sought to introduce the testimony of an expert witness, Dr. Biederman, to the effect that as a result of a test which he conducted upon a photograph of one of the line-ups, he concluded that the line-up was improperly suggestive. He based his opinion upon the fact that of 13 young women who viewed the photograph, all of whom were over 21 years of age, 10 selected defendent as the guilty person. On the preliminary examination of this witness, to determine his qualifications to testify, he acknowledged to the court that he had only once before testified in a court and that was not on a question of identification. It is of special significance that he testified that he did not know what was wrong with this particular line-up, and that he concluded that it was improper because, mathematically, 10 out of 13 persons who knew nothing about the case could not select the same man as the guilty person unless the line-up was "response biased". The receipt or exclusion of the testimony of an expert witness lies within the sound discretion of the Trial Judge *(People v Parks,* 41 NY2d 36, 47; *Meiselman v Crown Hgts. Hosp.,* 285 NY 389, 398-399; 3 Benders New York Evidence, § 101.01; Richardson, Evidence [10th ed], § 368). Based on the above testimony we agree with the trial court that the expert witness had not established his qualification to give expert opinion testimony which could be of assistance to the jury and which at the same time would not usurp the jury's function *(United States v Brown,* 540 F2d 1048, 1054; *People v Valentine,* 53 AD2d 832). We do not agree with the District Attorney's argument, however, that evidence concerning the propriety of the line-ups, even if probative, would not be admissible in response to testimony introduced by the People pursuant to CPL 60.30, bolstering the identification of defendant. Our determination is limited to approving the trial court's exclusion of the proffered testimony on the ground that, assuming that it was based on a sound scientific principle (cf. *Pereira v Pereira,* 35 NY2d

301, 306-307; *People v Leone,* 25 NY2d 511), the expert acknowledged that he had no opinion to offer as an aid to the jury concerning the impropriety of the line-up and could only conjecture that the line-up must have been faulty (cf. *People v Parks,* 41 NY2d 36, 48, *supra).* In this respect the offer of this evidence was an effort to have the witness perform the function of the jury, i.e., to draw the conclusion as to the propriety of the line-up *(United States v Brown,* 540 F2d 1048, 1054, *supra; People v Graydon,* 43 AD2d 842, 843). At the time of this line-up, defendant had not yet been arraigned, and so he had no absolute right to counsel thereat *(People v Gladman,* 41 NY2d 123, 130; *Boyd v Henderson,* 555 F2d 56). Nonetheless, it was "desirable" that counsel be present *(People v Blake,* 35 NY2d 331) and counsel was supplied. Although the counsel was not of defendant's personal selection, his rights were fully protected (see *United States v Wade,* 388 US 218, 227, 237, n 27; *United States v Allen,* 408 F2d 1287; *People v Blake, supra).* Any line-up, by its very nature, contains an element of influence and suggestability *(United States v Allen,* 408 F2d 1287, 1288-1289, *supra).* The evidence of the conduct of this line-up shows that it was not unnecessarily suggestive *(Neil v Biggers,* 409 US 188, 199-200). Moreover, the evidence of the contact that each complainant had with defendant, being for one and one-half hours with Y and nearly for one-half hour with K, demonstrates that they had ample opportunity to observe defendant during the commission of these crimes. Their immediate and positive identification of him removes any doubt that they were influenced by the nature of the line-ups. Moreover, their independent source of identification was clear and sufficient *(Neil v Biggers,* 409 US 188, 198-200, *supra; Simmons v United States,* 390 US 377, 384; *Boyd v Henderson, supra; People v Ramos,* 42 NY2d 834; *People v Cobenais,* 39 NY2d 968; *People v Carter,* 30 NY2d 279, 282-283; *People v Logan,* 25 NY2d 184, 191, cert den 396 US 1020; *People v Ballott,* 20 NY2d 600, 606). We further conclude that even if the exclusion of the doctor's expert testimony were error, there should be an affirmance because on this record the error was harmless *(People v Crimmins,* 36 NY2d 230). The other claims of trial error have been considered and we find them lacking in merit. (Appeal from judgment of Erie Supreme Court—sexual abuse, first degree, etc.) Present—Cardamone, J. P., Simons, Hancock, Denman and Witmer, JJ.