Meyer, J.
(dissenting). Because the majority’s insistence on following the lead of the Supreme Court in Kirby v Illinois (406 US 682)[1] accords neither with logic nor with our own prior decisions on the right to counsel, I respectfully dissent.
Comment on the Kirby decision has made abundantly clear the illogic of its efforts to distinguish the Supreme Court’s prior holding in United States v Wade (388 US 218). The decision has been characterized as “wrong from every perspective” (Grano, Kirby, Biggers and Ash, Do Any Constitutional Safeguards Remain Against the Danger of Convicting the Innocent?, 72 Mich L Rev 717, 730), “perhaps the least defensible, from a technical point of view, of the Court’s criminal law holdings during the term” (Young, Supreme Court Report, 58 ABAJ 1092), an exaltation of form over substance (Albert, Criminal Law — The Lineup’s Lament, Kirby v Illinois, 22 De Paul L Rev 660, 675), *489 and as one which “removes the protective effects of counsel’s presence precisely when the danger of convicting an innocent defendant upon a mistaken identification is greatest” (Woocher, Did Your Eyes Deceive You? Expert Psychological Testimony on the Unreliability of Eyewitness Identification, 29 Stanford L Rev 969, 996), among other criticisms. It was reached, moreover, notwithstanding that the reasoning of Wade, though not its facts, dictated a contrary conclusion, as pr e-Kirby scholarly comment had emphasized,[2] and as pr e-Kirby Federal and State court decisions had held.[3]
Nor would we be blazing a new trail in refusing on State constitutional grounds to follow Kirby. Though the majority of State courts deciding the issue since Kirby was decided have followed its rule, notwithstanding its lack of logic and in many cases without discussing the merits of the question or with an expression of reluctance,[4] other State courts have not felt so constrained. Thus, in Commonwealth v Richman (458 Pa 167, 171), the Pennsylvania Supreme Court, “convinced that it would be artificial to attach conclusionary significance to the indictment,” held that the “adversary judicial criminal proceedings” which triggered the right commenced with arrest,[5] in People v Bustamante (30 Cal 3d 88, 100, 101-102) the Supreme *490 Court of California held on the basis of the California State Constitution that “a California defendant’s right to assistance of counsel includes the right to counsel at a pretrial lineup” but noted that “if conditions require immediate identification without even minimal delay, or if counsel cannot be present within a reasonable time, such exigent circumstances will justify proceeding without counsel”, in People v Jackson (391 Mich 323, 338), the Supreme Court of Michigan concluded “independent of any Federal constitutional mandate, that, both before and after commencement of the judicial phase of a prosecution, a suspect is entitled to be represented by counsel at a corporeal identification or a photographic identification unless the circumstances justify the conduct of an identification procedure before the suspect can be given an opportunity to request and obtain counsel,”[6] and in Blue v State (558 P2d 636, 642 [Alaska]), the Supreme Court of Alaska, stating that it was not bound by United States Supreme Court decisions when interpreting its own State Constitution, held that “In balancing the need for prompt investigation against a suspect’s right to fair procedures * * * a suspect who is in custody is entitled to have counsel present at a pre-indictment lineup unless exigent circumstances exist so that providing counsel would unduly interfere with a prompt and purposeful investigation.” There is strong reason why we should do likewise and little of practical significance to justify the majority’s conclusion.
The reason, of course, is the numerous instances in which innocent persons have been convicted on the basis of erroneous identification testimony. The Supreme Court in Wade underscored the problem: “The vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification” (388 US, supra, at p 228), as have we, in People v Caserta (19 NY2d 18, 21): “One of the most stubborn problems in the administration of the criminal law is to establish identity by the testimony of witnesses to whom an accused was previously unknown, from quick observation under stress or when, as here, there was no particular reason to note the *491 person’s identity.” Over 55 years ago Professor (later Justice) Felix Frankfurter pointed out that “The identification of strangers is proverbially untrustworthy. The hazards of such testimony are established by a formidable number of instances in the records of English and American trials” (Frankfurter, The Case of Sacco and Vanzetti, p 30). Nor are such statements vague speculations; the documentation is exhaustive, explicit and vast.[7]
The Borchard book dramatically illustrates the strength of the proof. Of 65 cases discussed by Professor Borchard in which innocent persons lost their lives or served prison terms, 29 were the result of mistaken eyewitness identifications, in one of which the same man, Adolf Beck, was twice convicted for crimes he did not commit, in another of which 17 separate victims swore that the innocent person was the perpetrator though he and the actual perpetrator looked not at all alike, and in 20 of which the resemblance was not close.[8] Of equal significance in this respect is Justice Frank O’Connor’s article “That’s The Man”: A Sobering Study of Eyewitness Identification and the Polygraph (49 St John’s L Rev 1), not only because it details a number of cases of innocents convicted, but because it represents the considered views of one who has served as a Judge responsible for the trial of (and now appellate review of) criminal cases, and who also served for 10 years as the District Attorney of Queens County. Perhaps the crowning irony of the situation is that the decision in this cáse comes almost at the same time as the revelation,[9] some 69 years too late, of proof positive of the innocence of Leo Frank, whose 1913 conviction of rape and murder is one of the most celebrated of the wrong man cases, resulting as it did in the hanging of Frank by a lynch mob.[10]
*492 It is the demonstrated unreliability of identification testimony and the fear that additional innocent persons may be convicted, rather than, as suggested in footnote 4 of the majority opinion, a cynical and improper assumption of police misconduct, on which the right to lineup counsel is predicated. The Wade opinion is both an explicit disclaimer of any such assumption[11] and an explication of the danger when counsel is not present.[12] It also demonstrated that counsel has an important role at lineups which need not impede legitimate law enforcement and suggested the possible use of substitute counsel and legislative or other regulation of procedures as possible means of dealing with the practical and constitutional problems involved.[13] Consideration of each of those questions is, therefore, in order.
The dogma is that the role of counsel at a lineup is “passive”, but this is true only in the relative sense that he cannot engage in the plenary activity that he would during a trial. That he can be much more than an observer who will later use the knowledge thus gained to cross-examine witnesses at the trial or himself bear witness at the trial to events at the lineup is evident from our recent decision in People v Yut Wai Tom (53 NY2d 44). There defense counsel, though he did not stay to observe the actual lineup, arranged for defendant to be placed in different positions in the separate lineups that were to occur, for the removal of the jackets of the stand-ins because defendant was without a jacket, for the witnesses to view the lineup separately and for the wording of the questions to be addressed to them, and advised the defendant to assume the same pose that the stand-ins did and not to allow himself to be conspicuous (id., at p 52). Without reviewing in detail the *493 literature on counsel’s role at a lineup,[14] I note that the presence of counsel will reduce even unintentional biasing effects and that he can seek to enhance the fairness of the procedure by asking that witnesses be kept apart from one another both before and after lineups and that as to each witness a so-called blank lineup (without defendant in it) be held prior to that in which defendant appears, by making sure that disparities in size and physique are reduced and that none of the stand-ins are known to the witness, and by seeking, where law enforcement officials do not automatically do so, permission to have the procedure video taped. Moreover, although the officials in charge cannot be forced to accede to such requests, experience teaches that they often do,[15] both because obviating objections to fairness more readily assures admissibility at trial of the resulting identification if there is one and because it is a necessary concomitant of every mistaken identification that the actual perpetrator remains free to commit new crimes.
No one suggests that law enforcement can never be adversely affected by the delay involved in obtaining the presence of counsel for defendant. It is for this reason that, balancing the interests of defendant and of the State, the California, Michigan and Alaska Supreme Courts have excepted the situation in which exigent circumstances do not permit giving the suspect to be viewed an opportunity to request and obtain counsel, but do require that when the police have probable cause to arrest and there is no other circumstance requiring immediate identification, an arrested person must be taken to the station house and provided with counsel before a lineup can be held (Blue v State, 558 P2d 636, 642 [Alaska], supra; People v Bustamante, 30 Cal 3d 88, 100, 101-102, supra; People v Jackson, *494 391 Mich 323, 338, supra; People v Dixon, 85 Mich App 271, mot for lv to app den 406 Mich 906). It is a wholly unacceptable balancing process, however, which, with no reference whatsoever to whether law enforcement will be harmed in any way if counsel be provided and without regard to his express request for counsel, simply because formal prosecutorial proceedings have not yet been begun, subjugates the right to lineup counsel of a suspect who already has counsel to “significant inconvenience to the witnesses” or the undermining of “the substantial advantages of a prompt identification confrontation” (majority opn, at p 487) and which, as to an unrepresented defendant, denies him the right to the protection of counsel. The fact is that in none of the cases before the court was there any balancing law enforcement reason for not requiring the presence of counsel at the lineup: In Laffosse, the lineup occurred more than 10 weeks after the crime and the complaining witness was in good health; in Hawkins, the elapsed time was seven months and there was no necessity for holding the lineup immediately after arrest; in Johnson, although the witnesses and stand-ins had been assembled before defendant requested counsel, it appears that defendant made his request as soon as he was told he was to be put in a lineup and it does not appear that counsel could not have been obtained or that had he been so informed before the presence of witnesses and stand-ins had been arranged there would have been any problem in obtaining their presence at a later held lineup; in Diaz, defendant was represented in an unrelated matter by a Legal Aid attorney and there is nothing to indicate that any substantial delay would have resulted from obtaining his presence or that there was any need to hold the lineup before doing so.
Nor can it realistically be argued that providing counsel will impose too great a burden on law enforcement. Inconvenience there may be but nothing to compare to the living hell imposed upon an accused person required to serve a prison sentence for a crime he did not commit. The Wade decision not only suggested use of substitute counsel[16] and legislation or regulation as a means of meeting the practi *495 cal problems (388 US, at pp 237, 239), but also quoted at length the model statute proposed in Murray, Criminal Lineup at Home and Abroad (1966 Utah L Rev 610, 627-628), which provides not only for counsel but for other safeguards. The Oklahoma Court of Criminal Appeals thereafter adopted a set of nine procedural rules governing lineups the first of which was to require that the suspect be advised of his right to counsel (Thompson v State, 438 P2d 287, 289 [Okla]). The American Law Institute’s Model Code of Prearraignment Procedure recognized the right of “an attorney undertaking to act as counsel” for the suspect to be present at a precomplaint lineup (§ 160.3, subd [1]), although in deference to Kirby it did not apply to that situation the more stringent 48-hour notice to counsel rule that it proposed for postcomplaint identification (§160.3, subd [2]; see commentary, pp 422-424). New York has no such legislation[17] and although some enforcement officers have adopted regulations or initiated a system of video taping lineups (see People v Blake, 35 NY2d 331, 337-338), the presence of counsel is not part of present procedures, as the four cases now before us establish. Until it has been demonstrated that the presence of counsel at a prearraignment lineup in Alaska, California, Michigan, Pennsylvania and Oklahoma has presented some real problems for law enforcement in those States, or that the New York situation is so different from theirs as to make their system unworkable here, there is nothing to weigh in the constitutional balance against requiring counsel except speculation.[18] Section 6 of article I of the Constitution of New York *496 requires, in my view, that counsel be present at a corporeal identification procedure, whenever held, unless the People can demonstrate that exigent circumstances make the obtaining of counsel’s presence a real and substantial detriment to the invéstigatory process.
There is much in our prior decisions concerning the right to counsel, generally and at lineups, to support the rule that I urge we should adopt. With respect to the right to counsel we have “painted with broad strokes” (People v Arthur, 22 NY2d 325, 328) and noted our “special solicitude for this fundamental right” (People v Cunningham, 49 NY2d 203, 207) and “the right and need of an individual to have a competent advocate at his or her side in dealing with the State” (People v Skinner, 52 NY2d 24, 29). True, those cases involved confessions and the present cases concern prearraignment lineups, but People v Hobson (39 NY2d 479) and People v Settles (46 NY2d 154), both lineup cases, stand as equal monuments with Arthur and Cunningham to our recognition of the right. Thus, Hobson spoke of the need “to protect the individual, often ignorant and uneducated, and always in fear, when faced with the coercive police power of the State. The right to the continued advice of a lawyer, already retained or assigned, is his real protection against an abuse of power by the organized State” (39 NY2d, at p 485), and Settles of the fact that “the right of a criminal defendant to interpose an attorney between himself and the sometimes awesome power of the sovereign has long been a cherished principle” (46 NY2d, at p 160).
One need not rely on such generalities, however, for just as Wade and Gilbert presaged a rule contrary to that adopted by the Supreme Court in Kirby so do our prior decisions with respect to the majority’s acceptance of Kirby.
*497 Thus, in People v Blake (35 NY2d 331, supra) we recognized that “uncounseled prearraignment viewings before the filing of an accusatory instrument do not invariably require exclusion of the identification thus obtained” (at p 333), but held this court free, notwithstanding Kirby, “to evaluate independently the necessity of mandating, under the State Constitution as it interprets it, the presence of counsel at prearraignment viewings” (at p 336). Reasoning that although “the rules have developed largely in connection with interrogation * * * they extend logically to allowing such counsel to be present when the accused is subjected to a corporeal identification viewing” (at p 338), and relying upon ,“the precedents in this State providing a right of access to counsel even before formal initiation of the criminal action” (at p 339), we held that in the event of delay between arrest and the filing of an accusatory instrument “the prosecution would have the burden to explain and offer proof on the pretrial'identification hearing, if one is had, why the opportunity to so have counsel at the viewing was not afforded” (at p 340). The rules laid down by Blake, with the explicit notation that they “will not impair the efficiency of law enforcement, especially in the light of the pragmatic exceptions noted” (at p 341), were stated in the following paragraph (at pp 340-341): “In summary, the presence of counsel at identification viewings is mandated after the filing of an accusatory instrument on pain of exclusion of the identification, except in narrowly-exigent circumstances. After arrest but before the filing of an accusatory instrument the presence of counsel is not mandated, but is desirable. Where the accused has counsel known to the law enforcement authorities or there is insufficiently explained delay which prevents him from obtaining counsel as he would on arraignment, and he has not waived the right to counsel, the circumstances may establish his right to counsel at the viewing, the breach of which should result in exclusion” (italics supplied).
The right thus established has been applied, though an accusatory instrument has not yet been filed, when an order directing defendant to appear in a lineup or provid *498 ing for his removal from one place of detention to another for the purpose of his appearing in a lineup has been obtained and the police knew he was represented on an unrelated charge (People v Coleman, 43 NY2d 222; People v Lloyd Winston G., 45 NY2d 962; see People v Samuels, 49 NY2d 218). We have also characterized as a violation “in spirit at least, of the principles previously laid down by this court” the holding of a lineup without counsel after counsel had requested access to defendant (People v Burwell, 26 NY2d 331, 336).
I do not suggest that there is an absolute right to counsel at prearraignment lineup. Indeed, I recognize that in People v Gladman (41 NY2d 123, 130), a case in which, as shown by the briefs, defendant’s counsel conceded that Kirby limited the right to counsel to postarraignment lineups, but argued from the fact that arraignment followed immediately after lineup that the timing established defendant’s right to lineup counsel, we stated in so many words that “there is no absolute right to counsel at a prearraignment lineup,” that in People v Perez (42 NY2d 971) we held that defendant’s request that an attorney be obtained for lineup did not create a right to counsel, and that in People v Pickett (52 NY2d 892) we ruled that a defendant in custody on an unrelated charge was not entitled to counsel at an investigatory prearraignment lineup on the new charge when the record contained no indication that defendant was then represented by counsel on either charge.
What I do suggest is that the rule established by our lineup decisions to date is that there is no absolute preclusion of counsel at lineup simply because the lineup is held prearraignment and that our prior decisions require law enforcement officials, aware that a defendant has counsel on an unrelated charge, to contact counsel prior to holding a lineup unless they can show that because of exigent circumstances the delay in obtaining counsel’s presence would seriously prejudice the investigatory process. I would, moreover, because of the serious danger of misidentification involved in eyewitness identification whenever it *499 occurs, extend the Blake rule to cover not only the case in which law enforcement authorities know that defendant has counsel but also in which they have reason to know that fact but fail to inquire further. I would also overrule Perez and hold that a suspect must be advised prior to a lineup that he has no right to refuse to participate in the lineup but does have a right to be represented by counsel and that a request for counsel, whether resulting from such advice or made independently, requires the presence of counsel at lineup unless exigent circumstances and resulting prejudice can be demonstrated by the People.
The rule that I urge finds full constitutional support in the reasoning of our decisions in cases governing the right to counsel during interrogation (e.g., People v Bartolomeo, 53 NY2d 225 [knowledge that defendant was arrested seven days earlier on an unrelated charge obligates the authorities to inquire]; People v Cunningham, 49 NY2d 203, supra [request for counsel establishes right to counsel]) and, the danger of convicting an innocent person being different in form but equally as great in result through misidentification as through statements involuntarily obtained, I find no reason in either our Constitution or the practical necessities of law enforcement to justify the lesser rule now adopted as to lineups. I would, therefore, hold Laffosse and Johnson presumptively entitled to counsel by reason of their requests for counsel, Hawkins entitled to counsel because, as the Trial Judge’s finding affirmed by the Appellate Division establishes, the police officer knew Hawkins was represented in an unrelated drug case by counsel, and Diaz entitled to counsel because the police made no inquiry despite their discovery of a bail bond receipt issued to defendant the previous day. As already noted, in none of the cases does the record establish exigency nor, so far as appears, is there reason under the rule of People v Havelka (45 NY2d 636) to remand for a hearing on that issue. In each case, therefore, with the possible exception of Laffosse,[19] the lineup identification
*500 should have been suppressed and the conviction should now be reversed.
Chief Judge Cooke and Judges Jasen and Wachtler concur with Judge Gabrielli; Judge Meyer dissents and votes to reverse in a separate opinion in which Judges Jones and Fuchsberg concur.
In each case: Order affirmed.

. The majority’s conclusion that there is ho right to counsel at an investigatory lineup makes irrelevant to their determination of the Laffosse case the question whether if there were such a right it could be waived out of the presence of counsel (cf. People v Yut Wai Tom, 53 NY2d 44). I, therefore, do not discuss that issue.

. (E.g.: Mueller, Right To Counsel At Police Identification Proceedings: A Problem In Effective Implementation of An Expanding Constitution, 29 U of Pitt L Rev 65, 78, n 81 [“Since the reason for the rule is to prevent unfairness and to protect the right to meaningful confrontation at trial should the suspect be identified, the right to counsel must be afforded at any police-sponsored identification proceeding not conducted pursuant to Constitutionally sufficient regulations. Any other conclusion would be absurd”]; Quinn, In the Wake of Wade: The Dimensions of Eyewitness Identification Cases, 42 U of Col L Rev 135,143 [“Since the purpose of counsel’s presence is to avert prejudice and assure meaningful cross-examination at trial on the issue of identification, it should make no difference that the lineup occurs prior to the filing of criminal charges”]; Austin, Pretrial Right to Counsel, 26 Stanford L Rev 399, 410 [“a major departure from traditional sixth amendment functional reasoning”].)

. (Albert, op. cit., 22 De Paul L Rev 660, 674, n 70; and Note on Kirby in 1975 Wash U LQ 423,436-437, nn 74, 75; and n 5 to Kirby plurality opn [406 US 682, 687] set forth the cases pro and con; see, also, Austin, Pretrial Right to Counsel, 26 Stanford L Rev 399, 409; and commentary to the ALI Model Code of Prearraignment Procedure, p 420, n 2, both of which confirm that prior to Kirby a substantial majority of courts had applied Wade to preindictment identification proceedings and required counsel at all lineups.)

. (Note 1975 Wash U LQ 423, 437-440, and nn 76, 88.)

. (See, also, Commonwealth v Taylor, 472 Pa 1.)

. (See, also, People v Dixon, 85 Mich App 271, mot for lv to app den 406 Mich 906.)

. (Borchard, Convicting the Innocent, xiii; Frank & Frank, Not Guilty, pp 31, 61; Gardner, The Court of Last Resort, ch 8; Harris, A Treatise on the Law of Identification, pp 416-440; Houts, From Evidence to Proof, pp 10-13; Loftus, Eyewitness Testimony, pp 1, 7, 179; Reynolds, Courtroom, ch 8; Rolph, Personal Identity, pp 76-92; Sobel, Eyewitness Identification, ch 1; Wall, Eye-witness Identification in Criminal Cases, ch 1; Watson, Trial of Adolf Beck; Wigmore, Science of Judicial Proof [3d ed], § 251; Wilder & Wentworth, Personal Identification, p 37; Williams, Proof of Guilt [3d ed], pp 110-113.)

. (Borchard, op. cit, n 5, xiii; 1-3.)

. (New York Times, March 8, 1982, p 11, col 1.)

. (See, e.g., Golden, A Little Girl Is Dead.)

. (388 US, at p 235: “We do not assume that these risks are the result of police procedures intentionally designed to prejudice an accused. Rather we assume they derive from the dangers inherent in eyewitness identification and the suggestibility inherent in the context of the pretrial identification.”)

. (388 US, at pp 235-236: “The trial which might determine the accused’s fate may well not be that in the courtroom but that at the pretrial confrontation, with the State aligned against the accused, the witness the sole jury, and the accused unprotected against the overreaching, intentional or unintentional, and with little or no effective appeal from the judgment there rendered by the witness — ‘that’s the man.’ ”.)

. (388 US, at pp 230-232, 236-239.)

. (Eisenberg & Feustel, Pretrial Identification: An Attempt to Articulate Constitutional Criteria, 58 Marq L Rev 659; Grano, op. cit., pp 747, 785; Lefcourt, The Blank Line-Up: An Aid to the Defense, 14 Grim L Bull 428; Levine & Tapp, Psychology of Criminal Identification: The Gap from Wade to Kirby, 121 U of Pa L Rev 1079; Mueller, op. cit., p 74; Quinn, op. cit., p 149; Read, Lawyers at Lineups: Constitutional Necessity or Avoidable Extravagance, 17 UCLA L Rev 339, 364.)

. (Cf. People v Yut Wai Tom, 53 NY2d 44, supra; and see Mueller, op. cit., p 75; The Rule of the Defense Lawyer at a Line-up in Light of the Wade, Gilbert and Stovall Decisions, 4 Grim L Bull 273, 288; Eisenberg & Feustel, op. cit., p 677.)

. Substitute counsel at prearraignment lineups have been used effectively" in *495 Pittsburgh (Note, 29 U of Pitt L Rev 65, 83; and see Model Code of Prearraignment Procedure, § 160.5, subd [1], par [c], and commentary, at pp 452-453).

. Governor Dewey, himself a noted prosecutor, was sufficiently perturbed over the erroneous identification problem as a result of the conviction of Bertram A. Campbell for a crime he did not commit that he not only pardoned Campbell but also had his counsel propose the subject as one for study by the Judicial Council (Fourteenth Ann Report of NY Judicial Council, 1948, pp 233, 235). After studying a number of possibilities including use of psychological tests, lie detector tests and the requirement of corroboration of identification evidence, the council concluded that the problem was better dealt with by regulation than by legislation (id., at p 73; the study appears at pp 233-268). Other palliatives have been suggested, including special instructions to the jury (see United States v Telfaire, 469 F2d 552, 558-559; Woocher, op. cit., at pp 1002-1005; Grano, op. cit., at pp 794-795; Loftus, Eyewitness Testimony, at pp 189-190).

. There is, indeed, some empirical evidence to the contrary in Steele, Kirby v *496 Illinois: Counsel At Lineups (9 Grim L Bull 49). Professor Steel noted (at p 57, n 38) that correspondence with nine metropolitan police departments about the impact of the Kirby decision showed that six made no change in previously devised Wade procedures and the other three indicated that they would do likewise except perhaps in emergency cases or late at night.

. For the reason stated in footnote 1 above, I do not discuss the waiver issue involved in the Laffosse case.