THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v ARNOLD LINDIN, Defendant.

Supreme Court, New York County, March 14, 1989

## APPEARANCES OF COUNSEL

*Gerald McMahon* for defendant. *Robert M. Morgenthau, District Attorney (Miro Lovric* of counsel), for plaintiff.

## OPINION OF THE COURT

ALFRED H. KLEIMAN, J.

Defendant was indicted for the crime of grand larceny in the second degree (Penal Law § 155.35). A combined *Mapp, Huntley* and *Wade* hearing was held before me on June 13 and 14 and continued on August 11 and 15, 1988. The People presented the testimony of Detective James Schry, Police Officer George Komarow, Assistant District Attorney Larry Gormley, Louis Pearlman, Anny Pearlman, Alex Geller and Louis Goldsmith. I make the following findings of fact and conclusions of law.

FINDINGS OF FACT

On August 13, 1985 Detective James Schry was called to VUR, Inc., located at 150 Fifth Avenue, where he met Louis Pearlman. Pearlman informed Schry that he was robbed of $866,000 in diamonds by a man who identified himself as Victor Hoffman, the president of VUR, Inc. Hoffman had taken the diamonds into a back room to show to an anonymous buyer from West Germany. When he didn't reappear Pearlman looked into the back room, which was empty. Shortly thereafter, a composite sketch of Victor Hoffman was compiled.

On January 22, 1988 Schry was contacted by Sam Khol, who informed him that a man named Alex Grossman of Farron, Inc., located at 205 East 42nd Street, wished to purchase diamonds from him. Schry and Khol arranged for Khol to meet Grossman that day to see if Grossman was Victor Hoffman; Khol was familiar with the Pearlman incident of August 1985 because of the composite sketch. Schry also arranged for Louis Pearlman to be at that location.

Schry and Pearlman arrived at 205 East 42nd Street, Suite 1912, at approximately 1:00 P.M. Schry knocked on the door, which was opened by a man later identified as Dimitri. When Schry entered the office, he noticed a desk. Defendant was sitting behind the desk and Khol was sitting in front of the desk with his back toward Schry. When Pearlman walked in and noticed the defendant, he exclaimed, "that's him, that's Victor Hoffman, arrest him, arrest him." Schry placed defendant under arrest and placed handcuffs on him.

On April 7, 1988, following defendant's indictment on the instant charge, Assistant District Attorney Larry Gormley telephoned Mr. Herman, defendant's then counsel, to arrange a lineup. They agreed to hold the lineup on April 13, 1988. At approximately 4:30 P.M. on April 12th, Gormley received a telephone call from Herman advising him that he had been discharged by the defendant and requesting a postponement of the lineup. Gormley told Herman that the lineup would nevertheless be held the following day and that he should appear and told Herman that he was still the attorney of record until relieved by the court. Herman then hung up the telephone. A lineup was held on April 13th wherein defendant was identified by Louis Pearlman, Anny Pearlman, Alex Geller and Louis Goldsmith. Defendant was not represented by counsel at the lineup.

CONCLUSIONS OF LAW

### Warrantless Arrest

Defendant first challenges his warrantless arrest claiming that the police were required to obtain a warrant before arresting him at his place of business. However, there is no authority in *Payton (Payton v New York,* 445 US 573) or its progeny requiring a warrant where a person is arrested in his place of business, especially where the police are let in by a business associate of the defendant. Consequently, defendant's motion to suppress his warrantless arrest is denied.

### Identification

Defendant's motion to suppress the lineup is granted. In this State, the right to counsel attaches when the accused has been formally charged by indictment, information or complaint *(People v Hawkins,* 55 NY2d 474, 487 [1982], *cert denied* 459 US 846 [1982]; *People v Blake,* 35 NY2d 331, 339 [1974]; *see also, Kirby v Illinois,* 406 US 682, 688 [1972]). Once the right to counsel attaches "the right to have counsel present * * * at subsequent procedures such as a corporeal identification viewing, also exists." *(People v Blake, supra,* 35 NY2d, at 339; *see, People v Hawkins, supra,* 55 NY2d, at 487.)

Here, the People conducted a postindictment lineup. Accordingly, defendant's right to counsel had attached and he had the right to have counsel present at his lineup. However, prior to the lineup, the People were informed that defendant had discharged his retained attorney. Because the People refused defendant's request for a postponement, defendant was not represented by counsel at the lineup when four witnesses identified him. "[S]hould the right or access to counsel be denied, without sufficient excuse or explanation establishing an inevitable exigency, *an identification* should be excluded." *(People v Blake, supra,* at 339 [emphasis added].) The People made no showing establishing such exigent circumstances, or for that matter, that they would be prejudiced by a delay in the scheduled lineup. Thus, defendant's right to counsel was violated and the lineup must be suppressed.

It should be noted that under the circumstances of this case, the People could have avoided this result by postponing the lineup pending the retention of counsel or by requesting a ruling from the court as to how to proceed *(cf., People v Tineo,* 64 NY2d 531, 536 [1985]).

While it necessarily follows that evidence of the lineup must

be suppressed, it does not follow that, ipso facto, *any* in-court identification must be suppressed. As pointed out in *United States v Wade* (388 US 218, 240 [1967]), "a *per se* rule of exclusion of courtroom identification would be unjustified." The People must be given "the opportunity to establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identification[s]." (388 US, at 240.) A hearing must therefore be held "to determine whether the in-court identifications had an independent source" (388 US, at 242).

Accordingly, a hearing was held to determine whether an independent basis existed for any potential in-court identification by the witnesses. All four witnesses had prior relationships with the defendant and the court is satisfied that a sufficient basis exists as to all four witnesses, independent of the suppressed lineup, to allow them to make in-court identifications, and that the improperly held lineups did not taint their reliability *(see, People v Dodt,* 61 NY2d 408, 417 [1984]).

[Portions of opinion omitted for purposes of publication.]