OPINION OF THE COURT
Jerome L. Reinstein, J.
Two interesting questions arose on the Wade (United States v Wade, 388 US 218) hearing conducted in the instant case. The first involves the claim that any undue delay in filing an accusatory instrument following an *915 arrest which results in depriving a defendant of counsel at a corporeal identification, even assuming an otherwise unexceptionable viewing procedure, requires suppression of such pretrial identification testimony on the prosecution’s direct case. (Cf. Gilbert v California, 388 US 263.) The second requires the court to determine whether a positive identification of one defendant after viewing a photograph of a lineup following an uncertain identification at the lineup itself constitutes an inadmissible photographic identification (People v Griffin, 29 NY2d 91) or an admissible corporeal identification (CPL 60.30). The issues arose in the following factual context.
Defendants have been indicted, inter alia, for robbery in the first degree, criminal use of a firearm in the first degree and criminal possession of stolen property in the . second degree. The gravamen of the indictment is that on June 23, 1981, at approximately 11:30 p.m., defendants forcibly stole, at gunpoint, Preston Spencer’s 1972 Chevrolet “gypsy” cab and other personal property, including a sum of United States currency. Both defendants, plus a third person, were arrested 24 hours later for criminal possesion of the stolen “gypsy” cab.
Defendant Pruitt was postively identified as one of the robbers by Preston Spencer at a corporeal lineup held on June 25,1981. Defendant Chiles was not positively identified at another lineup held on the same date, but was identified as the second robber on June 29,1981, after Mr. Spencer was permitted, at his réquest, to look at a photograph of that lineup.
Defendants initially moved for an order excluding the identification testimony of Mr. Spencer due to the unfairness of the lineups, but, with the court’s permission, were permitted to include, as a basis for suppression, the issues referred to above.
Ordinarily, the People must initially show that the pretrial identification procedures utilized were not constitutionally impermissible. If such procedures were improper, the People then have the burden of proving, by clear and convincing evidence, that any prospective in-court identification testimony, rather than stemming from *916 a tainted pretrial confrontation, has an independent source. (People v Ballott, 20 NY2d 600.)
However, if there is undue delay between an arrest and the filing of an accusatory instrument which effectively deprives an accused of counsel at a corporeal viewing for identification purposes, the prosecution has the additional burden of justifying such result. (People v Blake, 35 NY2d 331, 340.)
At the pretrial Wade hearing the People called three witnesses, Police Officer William Farrell, Assistant District Attorney Pat Bruno and the complainant, Preston Spencer; and the defendants called two witnesses, Police Officer Thomas Bardelli and Assistant District Attorney Arthur Drotzer. Based on the credible evidence adduced at the hearing, the following findings of fact and conclusions of law are made.
FINDINGS OF FACT
On June 23, 1981, at approximately 11:00 p.m. Mr. Preston Spencer picked up two male passengers at Amsterdam Avenue and 155th Street in Manhattan and drove them, after a brief stop on Featherbed Lane, to Grand Avenue near its intersection with Tremont Avenue in The Bronx. There he was robbed by the two passengers at gunpoint of his cab, cash and other personal property.
At 11:00 p.m. on June 24, 1981, Police Officer William Farrell was on routine motor patrol with his partner at 170th Street and Crontona Avenue where he observed defendant Pruitt with a hammer in his hand trying to open the trunk of a car, defendant Chiles exiting from the driver’s seat of the vehicle and a third individual standing near the front passenger seat. After further investigation revealed that the car, Mr. Spencer’s, had previously been reported stolen, all three individuals were arrested for criminal possession of stolen property, unauthorized use of a vehicle and criminal mischief.
The three individuals were then processed at the 42nd Precinct and at Bronx Central Booking where they were photographed and fingerprinted. Because of the lateness of the hour they were lodged overnight at the 50th Precinct *917 and returned to Criminal Court on the morning of June 25 for arraignment.
Officer Farrell arrived at the Criminal Court Building at 9:00 a.m. on June 25,1981 and proceeded to the complaint room where he met with the complainant, Mr. Spencer, and Assistant District Attorney Drotzer for the purpose of preparing a felony complaint (by the officer) and a supporting deposition (by Mr. Spencer).
After conferring with the complainant, and a search of Mr. Pruitt, Officer Farrell ascertained that Mr. Pruitt possessed an eyeglass case which had also been stolen from Mr. Spencer on June 23.
Based on this newly discovered evidence, Assistant District Attorney Drotzer instructed Officer Farrell to take the three defendants and Mr. Spencer to the 48th Precinct for the purpose of conducting a lineup to determine if any one of them was also involved in the robbery.
Three separate and otherwise untainted lineups were held at the 48th Precinct, between 4:30 p.m. and 5:33 p.m. that day, at which Mr. Spencer was only able to positively identify Mr. Pruitt as one of the robbers.
Later that evening a felony complaint charging defendant Pruitt with robbery in the first degree and related crimes was prepared by Assistant District Attorney Pat Bruno and signed by Preston Spencer; and a felony complaint charging the three persons arrested by Officer Farrell for criminal possession of stolen property and related crimes was prepared by Mr. Bruno and executed by the arresting officer. On Friday, June 26, 1981, all three men were arraigned, with bail fixed only for defendant Pruitt; while the other two individuals were released on their own recognizance.
On Monday, June 29, 1981, while in the Grand Jury waiting room, Mr. Spencer told Officer Farrell and Assistant District Attorney Bruno that he thought he knew who the second robber was; He was shown a photograph of each lineup and then positively identified defendant Chiles. The instant indictment followed.
CONCLUSIONS OF LAW
The Supreme Court’s decision in United States v Wade *918 (388 US 218, supra) was originally interpreted in this and other jurisdictions as requiring counsel at all pretrial lineups. (Sobel, Eye-witness Identification, § 17; People v Smith, 110 Misc 2d 616.) However, in Kirby v Illinois (406 US 682, 688), the court held that such right “attaches only at or after the time that adversary judicial proceedings have been initiated”.
Following Kirby’s clarification as to when the right to counsel attaches under the Sixth Amendment, our Court of Appeals re-evaluated such right under the New York State Constitution in People v Blake (35 NY2d 331). After reviewing decisions which had interpreted an accused’s right to counsel more expansively under the New York State Constitution than Supreme Court interpretations under the Fifth and Sixth Amendments, the court concluded that (p 340) “the presence of counsel at identification viewings is mandated after the filing of an accusatory instrument on pain of exclusion of the identification, except in narrowly-exigent circumstances.”
However, absent exempted exigencies, the court cautioned that exclusion may also result if, inter alia, there is an insufficiently explained delay which prevents an accused from obtaining counsel. Specifically, “an undue delay [between arrest and the filing of an accusatory instrument] is prima facie a suspect circumstance suggesting that the delay may have been for the purpose of depriving the accused of counsel at a viewing. In that event, the prosecution would have the burden to explain and offer proof on the pretrial identification hearing, if one is had, why the opportunity to so have counsel at the viewing was not afforded.” (People v Blake, supra, p 340.)
Clearly, if the felony complaint containing the original arrest charges had been promptly and timely filed in the late morning or early afternoon of June 25, defendants’ right to counsel would have attached and the subsequent lineups, in the absence of counsel, would have been impermissible. (People v Samuels, 49 NY2d 218, 221; People v Blake, supra, p 339.)
However, delay, even undue delay, in filing the accusatory instrument does not require the application of a per se *919 exclusionary rule. Although unwarranted delay is a “suspect circumstance”, it, alone, is not dispositive. (Cf. People v De Jesus, 63 AD2d 148, app dsmd 48 NY2d 734.)
The overwhelming majority of cases which have considered arraignment delays effectively resulting in denial of the presence of counsel involve confessions and not lineups. (See, e.g., People v De Jesus, supra; People v Lockwood, 44 NY2d 769, revg 55 AD2d 17, on the dissenting opn of Capozzoli, J.; People v Collazo, 98 Misc 2d 58, and cases cited therein; Admissibility of confession as affected by delay in arraignment of prisoner, Ann., 19 ALR2d 1331.)
People v Smith (86 Misc 2d 546) is the only reported case found by the court which has a fact pattern similar to the case at bar. On September 9,1975, Smith and another were arrested for grand larceny and criminal possession of a car forcibly taken from ius owner three days earlier. Some six hours after the arrest he became a robbery suspect. Smith was arraigned on the lesser charges on September 10 and an attorney was appointed to represent him (after a Legal Aid Society attorney who represented both defendants at arraignment was relieved). Defendant was paroled, immediately rearrested on the robbery charge and placed in a lineup the following day in the absence of counsel. The court denied defendant’s motion to suppress relying, in significant part (at p 550), on the fact that “the lineup [though ‘interwoven’ to some extent with the original arrest charges] was not conducted as part of the proceedings for the ‘specific charges’ for which defendant was arraigned”, citing People v Taylor (27 NY2d 327). Since Taylor was effectively overruled in People v Rogers (48 NY2d 167) and interrelated matters now do have a bearing on the right to counsel (cf. People v Miller, 54 NY2d 616; People v Ermo, 47 NY2d 863), the precedential value of Smith is questionable.
Despite New York’s proud tradition of extending protections afforded by the New York State Constitution’s guarantee of an accused’s right to counsel beyond those required by its Federal counterpart (People v Settles, 46 NY2d 154; People v Blake, 35 NY2d 331, supra), and the apparent trend toward enlarging that right (e.g., People v *920 Bartolomeo, 53 NY2d 225), one potential for abuse seemingly remains in lineup situations — purposeful delay following arrest.
In this State a defendant’s right to counsel now indelibly attaches on commencement of formal adversary proceedings. (People v Settles, supra; People v Samuels, supra.) It also indelibly attaches prior to the commencement of formal adversary proceedings where a suspect has retained an attorney to represent him on related, or even unrelated, matters. (People v Donovan, 13 NY2d 148; People v Arthur, 22 NY2d 325; People v Hobson, 39 NY2d 479; People v Rogers, 48 NY2d 167, supra; People v Skinner, 52 NY2d 24.) In People v Cunningham (49 NY2d 203) the right was extended to also embrace a suspect in custody not yet represented by counsel but who requested representation.
However, the Cunningham rule, which applies to interrogation, has never been broadened to include a corporeal viewing. (See People v Perez, 42 NY2d 971; People v Pickett, 52 NY2d 892; but cf. People v Moore, 79 AD2d 619.)
While there is, concededly, a significant difference between the roles played by an attorney at a lineup and during interrogation, a lawyer’s participation at the lineup is not merely that of a wholly passive observer. As Officer Bardelli, whose sole function is to conduct police initiated lineups, admitted at the hearing he often changes stand-ins and alters their appearance upon request of defense counsel to assure fairness of the lineup.
Accordingly, since the impecunious arrested suspect against whom no formal proceedings have been commenced will invariably be unrepresented at a subsequently held lineup, the prosecution should carry a heavy burden in justifying the delay between arrest and the filing of an accusatory instrument.
In this case, the court finds that the People have met such burden.
Assistant District Attorney Drotzer directed the arresting officer to conduct an immediate lineup promptly after receiving information that the defendants may have been involved in a robbery. Mr. Drotzer was not merely seeking evidence to buttress his existing case, he was directing the *921 continued investigation of a much more serious crime, robbery in the first degree. In such connection, it may be parenthetically noted that in view of the age of Mr. Spencer’s car (a 1972 Chevrolet) and its current use (as a “gypsy” cab), it is doubtful that any felony conviction (which requires establishing a value in excess of $250) could have been proven, or would even have been pursued, under the original arrest. Before processing the matter further and presenting it to the arraignment court for the purpose of fixing bail, Mr. Drotzer was justified in ascertaining whether this case involved a probable class B felony (armed robbery) or a possible class E felony (criminal possession of stolen property in the second degree.)
Additionally, if delay is involved, prompt viewings have been held to be “paramount to the desirability of counsel’s presence at súch identifications” to prevent failure of a witness’ memory and to release the innocent. (People v Blake, supra, p 337; People v Logan, 25 NY2d 184.) Indeed, in the instant case the third person arrested, Allan Carr, was completely absolved, and Mr. Chiles was temporarily absolved, of responsibility for the robbery after the lineups.
In sum, the District Attorney directed that the lineups take place in good faith and not with any purposeful intent of depriving defendants of counsel thereat.
The second question raised relates to whether the Chiles identification should be considered photographic or corporeal.
Initially, it is noted that the issue presented does not involved the so-called “Lawrence lineup”. (People v Lawrence, 4 Cal 3d 273; Sobel, Eye-witness Identification, § 48.) In Lawrence, a witness was shown a photograph of a simulated lineup which raised issues not here pertinent. In this case Mr. Spencer viewed the corporeal lineup on June 25, 1981, and a picture thereof on June 29.
The picture of the Chiles lineup is of poor quality. It depicts five seated black males of similar age, build and height. However, only Mr. Chiles has a distinctive mustache and short goatee. Although Officer Bardelli, who conducted the lineup, stated that at least two other stand-ins had facial hair, a mustache and a goatee, such fact is not readily discernible from the photograph.
*922 In light of the foregoing, since Mr. Spencer did not make a positive identification of Mr. Chiles until after he viewed the photograph, the court holds that this was a photographic identification, though not impermissibly suggestive in the circumstances of this case, which is not admissible on the People’s direct case. (People v Griffin, 29 NY2d 91, supra.)
While the Pruitt lineup picture is also of poor quality, there is nothing depicted therein to indicate that the lineup was unnecessarily suggestive and conducive to a very substantial likelihood of an irreparable misidentification.
Finally, and in any event, the court finds that the People have proven, by clear and convincing evidence, that any prospective in-court identification will stem from an independent source. Mr. Spencer drove the defendants around the city for some 30 minutes on June 23. Though it was evening, Mr. Spencer was aided in his viewings by street lights and the dome light of his cab which remained lit for several minutes each time the cab stopped. He also faced Mr. Pruitt at close range when Pruitt patted him down before the robbery was concluded. Any conflicting testimony regarding the identifications previously made, which arose at the hearing, bear on the weight to be accorded this evidence and not on its admissibility.
Accordingly, defendants’ motion to suppress is granted to the extent of precluding the introduction of lineup identification testimony as to defendant Chiles on the People’s direct case; and otherwise denied. The People, of course, are also precluded from introducing, on their direct case, testimony regarding the extrajudicial identification of defendant Chiles from the photograph of the Chiles lineup.