*829 OPINION OF THE COURT
Steven W. Fisher, J.
Charged with first degree robbery, the defendant moves to suppress potential identification testimony. In support of his motion, he raises a novel claim regarding the duties and responsibilities of a defense lawyer at a lineup.
The defendant argues that he was deprived of the effective assistance of counsel when his attorney made suggestions that were accepted by the police to make the lineup more fair. He maintains that the only proper role for an attorney at an identification procedure is to bear witness to unfairness, not to help cure it.
The facts as developed through the testimony of Police Officer James Aspenleiter and defendant’s former attorney James Hubbert are largely undisputed.
On March 27, 1996, Officer Aspenleiter was on duty, assisting in the investigation of a robbery that had occurred earlier that day in Corona, Queens. Two men, Lanier Patterson and Edward Yves, had been arrested and, in an interview with Officer Aspenleiter, Patterson implicated the defendant in the crime.
The next day, Aspenleiter went to the defendant’s apartment and told his mother that the police were looking for her son in connection with the incident. The officer left his card and asked that the defendant call him.
On March 29, 1996, the officer received a call from James Hubbert, an attorney representing the defendant. Mr. Hubbert agreed to bring the defendant in for a lineup to be held on the afternoon of April 2, 1996. The lineup was postponed one day because of Mr. Hubbert’s unavailability.
On April 3, 1996, the defendant, his mother, and Mr. Hubbert arrived at the precinct. The defendant was not restrained in any way as Officer Aspenleiter went about arranging the lineup. The defendant told the officer that he was 25 years old and stood approximately 5 feet, 4 inches tall. The officer estimated that the defendant weighed between 150 and 160 pounds.
Officer Aspenleiter then went to a local shelter to find five men who resembled the defendant to serve as fillers in the lineup. Of the men he brought back to the precinct, three stood 5 feet, 10 inches tall and two were 5 feet, 9 inches. One was 37 years old, two were 35, one was 29, and one was 28. They ranged in weight from 159 to 182 pounds.
*830 Mr. Hubbert voiced three objections to the proposed lineup. He pointed out that the defendant had a prominent scar on his head that would distinguish him from the others. He noted that the defendant had facial hair while two of the fillers did not. And he complained that the fillers were all substantially older than the defendant.
To meet those objections, Officer Aspenleiter had the lineup participants wear baseball caps. The cap worn by the defendant completely covered his scar. The officer then simulated facial hair on the two clean-shaven fillers by rubbing their chins with carbon paper.
With respect to the ages of the fillers, however, Officer Aspenleiter concluded that the lineup was fair, and he declined to seek out new stand-ins. He made note of counsel’s objection.
The lineup was then set up and photographed. All participants were seated. The defendant chose to hold number three and to sit in the third position.
The complainant viewed the lineup in the presence of Officer Aspenleiter, a police sergeant, and Mr. Hubbert. He identified the defendant as "the one that hit [him] over the head with the beer bottle and took [his] stuff”.
The defendant does not dispute that the fairness of the lineup was enhanced when Officer Aspenleiter had the participants wear caps, and when he used carbon paper to simulate facial hair on the two clean-shaven fillers. He argues, however, that those measures were taken in response to objections that Mr. Hubbert never should have made.
The defendant points out that, the more unfair a lineup, the greater the chances that a suppression motion will succeed. Therefore, he maintains, by helping to reduce unfairness in the lineup, Mr. Hubbert acted against his client’s interests by decreasing his chances of winning suppression, and thereby deprived the defendant of the effective assistance of counsel. He contends that the appropriate remedy is the suppression of evidence of the lineup identification.
In United States v Wade (388 US 218 [1967]), the landmark case in which it was first held that a defendant has a constitutional right to counsel at a postindictment lineup, the Supreme Court noted that "where so many variables and pitfalls exist, the first line of defense must be the prevention of unfairness and the lessening of the hazards of eyewitness identification at the lineup itself’ (supra, at 235). Ten years later, the Court observed: "Persons who conduct the identification procedure *831 may suggest, intentionally or unintentionally, that they expect the witness to identify the accused. Such a suggestion, coming from a police officer or prosecutor, can lead a witness to make a mistaken identification. The witness then will be predisposed to adhere to this identification in subsequent testimony at trial * * * If an accused’s counsel is present at the pretrial identification, he can serve both his client’s and the prosecution’s interests by objecting to suggestive features of a procedure before they influence a witness’ identification” (Moore v Illinois, 434 US 220, 224-225 [1977] [emphasis supplied]).
Thus, although the Supreme Court saw the presence of an attorney at a lineup as vital to a defendant’s later efforts to reconstruct and challenge any unfairness in the procedure (see, United States v Wade, supra, at 236), the Court never suggested that the role of counsel must be limited to that of a passive observer.
Moreover, our own Court of Appeals has found that active participation by counsel at a lineup such as requesting a change of the dress or positions of the fillers is evidence of appropriate legal representation (see, e.g., People v Yut Wai Tom, 53 NY2d 44, 52 [1981]; cf., People v Pruitt, 112 Misc 2d 914, 920 [Sup Ct, Bronx County 1982]). Indeed, the failure of counsel to offer objections may lead to an inference that the lineup was fair, for as one court observed in a case where the fairness of a lineup was strongly contested: "It contradicts normal experience and common sense to suppose that defense counsel would have remained silent if he had observed that the lineup was so constituted as to point the witnesses unfairly to his client” (People v Adams, 90 AD2d 1, 11 [1st Dept 1982]).
I need not pass upon the legitimacy of an attorney’s deliberate decision to say nothing in the face of preventable unfairness at a lineup in order to gain a tactical advantage for a defendant at some later proceeding because the defendant here does not argue that such conduct is permissible, but that it is the only constitutionally acceptable course for counsel to follow. In this, he is plainly wrong.
I hold that an attorney at a lineup acts appropriately and renders effective assistance of counsel when he or she voices objections to suggestive features in the procedure and offers recommendations on how to eliminate or reduce unfairness. Mr. Hubbert did that for the defendant here. His conduct provides no grounds for complaint.
The defendant also argues, however, that, notwithstanding Mr. Hubbert’s efforts, the lineup as finally constituted *832 remained unduly suggestive because of the disparity in appearance between the defendant and the five fillers. I disagree.
The effect of any height and weight differences was largely eliminated when Officer Aspenleiter conducted the lineup with the participants seated (see, e.g., People v Gelzer, 224 AD2d 443 [2d Dept 1996], lv denied 88 NY2d 847; People v Fisher, 143 AD2d 1037 [2d Dept 1988], lv denied 73 NY2d 921). And the use of the caps removed any suggestiveness arising from the defendant’s scar (cf., People v Meatley, 162 AD2d 721 [2d Dept 1990], lv denied 76 NY2d 942).
The fact that two of the fillers lacked facial hair would not have rendered the lineup unfair (cf., People v Gallant, 150 AD2d 602 [2d Dept 1989]). Nevertheless, acting out of an overabundance of caution, Officer Aspenleiter avoided any hint of unfairness by using carbon paper to simulate facial hair on the clean-shaven stand-ins.
It is true that three of the fillers were somewhat older than the defendant. But two were within four years of his age, and, in any event, it is not the actual age of the stand-ins that matters but how old they look (cf., People v Pinckney, 220 AD2d 539 [2d Dept 1995], lv denied 87 NY2d 906).
A defendant in a lineup need not be surrounded by individuals who are nearly identical to him but only by those who are reasonably similar in appearance (see, e.g., People v Chipp, 75 NY2d 327, 336 [1990], cert denied 498 US 833; People v Gelzer, supra; People v Velez, 222 AD2d 625 [2d Dept 1995], lv denied 88 NY2d 887; People v Pinckney, supra). I have examined the photographs of the lineup here and I conclude that the fillers were reasonably similar in appearance to the defendant, and that the lineup was neither unduly suggestive nor conducive to irreparable misidentification (see, e.g., People v Folk, — AD2d —, 1996 NY Slip Op 10640 [2d Dept, Nov. 18, 1996]).
Accordingly, the defendant’s motion to suppress potential identification testimony should be denied in all respects.